1  DANIEL A. HOROWITZ Bar No. 92400
   Attorney at Law
2  P.O. Box 1547
3  Lafayette, California 94549
   (925) 283-1863
4

5  Attorney for Vilasni Ganesh

6

7  # UNITED STATES DISTRICT COURT

8  # NORTHERN DISTRICT OF CALIFORNIA

9  # SAN JOSE DIVISION

10

11

12  UNITED STATES OF AMERICA,

13                                    Case No. **CR 16-00211 LHK**

14          Plaintiff,

15

16  vs.

17  VILASINI GANESH et al.,

18          Defendants.

19
   _____/
20

21                      **PROPOSED EARLY SENTENCING BRIEF**

22

23

24

25

26

27

28  **CR 16-00211 LHK**
    **Proposed Early Sentencing Brief**

The defense seeks briefing and ruling on the issues below so that work for sentencing can be consistent with the Court's determinations of fact and law on these issues. This will significantly narrow the scope of sentencing preparation, and CJA / government costs. It will also allow the parties to meet and confer on the determined issues so that sentencing will be more efficient. These issues will all have to be ruled on at some point. An early ruling will be beneficial to all.

**1.**

**ANY LOSS ABOVE THE DOLLAR VALUE OF THE COUNTS OF CONVICTION MUST BE PROVEN BY CLEAR & CONVINCING EVIDENCE**

The actual loss on counts 2-6 and 11-15 are minimal. (The FSI misstates the loss by including the total amount of the check issued. The EOB's and spreadsheets show that multiple payments are included in those checks.) In reality, the maximum loss(es) as shown in those counts are $ 300 (assuming a 99245 bill) times 12. (There are 10 counts of conviction but count 11 alleges 3 dates.) So the real maximum loss is **$ 3,600.00.** If we add up the erroneous totals as pled, counts 2-6 total $ 14,258.06 and counts 11-15 are unspecified but would be 7 x $ 300 (count 11 alleged 3 offense dates), or $ 2,100.00) This totals **$ 16,358.06.** So in reality the number is $ 3,600 and as pled it is $ 16,358.06. Either way, a 2B1.1 increase is between 0 and 6. These numbers are minimal in relation to what the government will seek at sentencing. Under these facts, the Ninth Circuit requires proof of loss must be established by clear and convincing evidence.

*United States v. Gambaryan* (9th Cir. 2016) 654 Fed.Appx. 888, is cited pursuant to Fed. Rule of Appellate Procedure 32.1. It cites the established 9th Circuit law but it is useful because its facts significantly mirror the Ganesh case. The case involved a sentencing decision by judge Otis D. Wright, II, of the Central District of California. The defendant, Gambaryan was convicted of fraud because he billed Medicare for wheelchairs that were not medically necessary.

Judge Wright found that $ 2.5 million dollars of billings were fraudulent for purposes of sentencing.

As with Ganesh, the focus of sentencing was the calculation of losses beyond those inherent in the counts of conviction. Mr. Gambaryan argued that the loss amount had to be (and was not) supported by clear and convincing evidence. Like Ganesh, the proven loss was small compared to the potential sentencing loss. The loss arising exclusively to counts of conviction would have led to a Guidelines range of six to twelve months. The disputed sentencing enhancements increased this range to sixty-three to seventy-eight months. These ranges are beyond what will be at issue in the Ganesh case which is why the holding in *Gambaryan* is important beyond the cases that it cited.

The District Court's sentence was reversed and remanded (open) for resentencing. The Court in *Gambaryan*, citing the established, Ninth Circuit precedent, held:

> We have held that "facts found in support of Guidelines enhancements that turn out to have a **disproportionate impact on the ultimate sentence** imposed **[must] be established by clear and convincing evidence,**" rather than the otherwise applicable preponderance of the evidence standard. United States v. Staten, 466 F.3d 708, 720 (9th Cir. 2006). Indeed, "**where a severe sentencing enhancement is imposed on the basis of uncharged or acquitted conduct, due process may require clear and convincing evidence of that conduct.**" United States v. Treadwell, 593 F.3d 990, 1000 (9th Cir. 2010). Based on this consideration and others applicable in these circumstances, see id. we hold that the loss enhancement was required to rest on clear and convincing evidence.

(*United States v. Gambaryan* (9th Cir. 2016) 654 Fed.Appx. 888, 890, emphasis added)

Therefore, the defense submits that the clear and convincing standard applies in the Ganesh case.

## THE ACTUAL LOSS FOR AN IMPROPER 99215 OR 99245

## IS NOT THE CLAIMED AMOUNT, IT IS THE ANTICIPATED

1
**PAYMENT AMOUNT**

2      This is not the place for a factual dispute, but the evidence at trial (and the undeniable

3 truth if extrinsic evidence is required), is that insurance companies pay either the contracted

4 amount or an out of network amount.   Both of these amounts (for the Santa Clara County area),

5 are lower than the $ 300 (99245) or $ 200 (99215) that Dr. Ganesh billed.  In network providers

6 are "Par" providers (short for participating providers).  They are paid a contract rate.  Non Par

7 providers are paid near the network rate but rarely more.

8      The spreadsheets in the Ganesh case show that the billed rate was **always** (as far as this

9 writer can find), adjusted down from any rate ever billed.

10       For example, Count 3 is the March 5, 2012 bill to M.K. for a visit that is not reflected in

11 Dr. Ganesh' medical file for that patient.   The Government's spreadsheet, Exhibit 122 reflects

12 that $ 300 was billed for the visit but only $ 216.48 was paid.  (Exhibit A is extracted from that

13 spreadsheet.  It is the M.K. entry with the name redacted and some fields removed and it reflects

14 this reduction.)  That spreadsheet (Gov. Exhibit 122), contains 1079 entries and purports (by its

15 title) to represent the records for the patients named in the "complaint".  Not a single one of the

16 amounts billed was paid in full.  All reductions were significant.  (Exhibit B)   Therefore, there is

17 a genuine *factual* argument that the billed amount is not the intended loss amount.   The law

18 supports making such a contention.

19      In *United States v. Popov*, 742 F.3d 911 (9th Cir. 2014), (cited in  *Gambaryan),* the

20 defendants argued that, "[b]ecause it is well known that Medicare routinely pays much less than

21 the billed amount, ... the district court should have calculated the intended loss based on the

22 amounts actually paid by Medicare." Id. at 915.   The *Popov* court found that the amount billed

23 was "prima facie evidence of intended loss for sentencing purposes."  However, the court went

24 on to state that "the parties may introduce additional evidence to support arguments that the

25 amount billed overestimates or understates the defendant's intent." *U.S. v. Popov* (9th Cir. 2014)

26 742 F.3d 911, 916

27

28
**CR 16-00211 LHK**
**Proposed Early Sentencing Brief**                    3

1    As the evidence at trial shows that the reductions are standard and as the spreadsheets

2    show that these reductions are constant, the defense asks that the court rule no additional proof is

3    needed on this point and that the "allowed" amounts reflect the intended loss and not the billed

4    amount.

5

6

7

8              **THE TRUE VALUE OF THE WORK AND PAYBACKS (CHARGE BACKS)**

9                              **MUST REDUCE THE LOSS**

10   Citing *U.S. v. Pham* (9th Cir. 2008) 545 F.3d 712 at 718-9, the court in *U.S. v. Armstead*

11   (9th Cir. 2008) 552 F.3d 769 held that if a loss "is reimbursed immediately [it] does not amount

12   to a pecuniary harm because the ultimate loss cannot be measured in monetary terms." *Id* at 782.

13   If a bill is too high but real work was done, the loss is the difference between the genuine

14   rate and the billed rate.  If the billed rate is technically the "fraud", the provision of real work

15   immediately reduces any potential fraud loss.  In the present case, the patients files reflect that

16   work was done.  The patient testimony reflects the fact that treatment was rendered.

17   To the extent that the wrong code was billed but real work was done the fraud is only

18   incorrect billing.  The loss or intended loss is only the difference between the correct code and

19   the genuine amount due.   The Guidelines are designed with this adjustment.

20   See: " U.S.S.G. § 2B1.1, cmt. n.3(E).  Credits Against Loss states that the loss shall be

21   reduced by "... money returned [e.g. charge backs on the Ganesh spreadsheets] "and the fair

22   market value of the property returned and the services rendered, by the defendant or other

23   persons acting jointly with the defendant...", e.g. the actual services rendered including those

24   rendered but not reimbursed.

25    Also, self generated reimbursements by the insurance company (ies) are reflected on the

26   spreadsheets as overpayments were charged back (as reflected by bracketed amounts on the

27

28   **CR 16-00211 LHK**
     **Proposed Early Sentencing Brief**          4

government spreadsheets).

The defense asks that the Court endorse this process and the parties can then provide accountings to reflect these facts.

## THE LOSSES POST DETECTION OF THE FRAUD CANNOT BE COUNTED

The Guidelines provide for a loss calculation only until the fraud is detected. We know from much of the evidence at trial that fraud was detected 5-7 years ago. Loss calculations must stop at that point.

(E) Credits Against Loss.--Loss shall be reduced by the following:>

<(I) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

(U.S.S.G. § 2B1.1, cmt. n.3(E))

Hence, the parties should either agree or produce from evidence at trial or other sources, the date of discovery of the fraud. This is very important with companies like Anthem which not only knew of the billing issues but which by its own admission, paid only 8% of the bills.

## BILLING ON THE WRONG DAY MUST BE OFFSET BY
## CORRECT DAYS THAT WERE NOT BILLED

It cannot be a fact that every single wrong billing date was a crime. At times, real service justifying a 99215 or 99245 was performed but billed as if service were performed on a different date. This is a bonanza for the insurance company but it should this free work due to billing errors should not be ignored at sentencing. The actual loss or intended loss is the amount above which payment should have been made. If the wrong date was billed and services were not paid

**CR 16-00211 LHK**
**Proposed Early Sentencing Brief**                    5

for real work, these should balance out.  Only days with no treatment and fraudulent bill or real treatment but an upcoded bill should be counted.

By reviewing the medical records and looking for dates not billed and/or not paid, we can have an accurate figure of dates where services were provided but not compensated.  An accurate billing code can be assigned (perhaps a standard office visit such as 99212 or 99213) and the amount can be deducted from the loss amount.

A review of billing records shows that on some dates treatment was rendered but not billed – ever.  Other cases of service performed but not billed may have been billed mistakenly on the wrong day.  Either way, services provided but never compensated should be offset by services billed without corresponding medical records to reflect treatment.

For example, Exhibit C is a portion of the M.K. spreadsheet covering 12/29/11 - 1/30/12. Nothing is billed or paid for 1/12/12.  Exhibit D is the redacted chart note for that date (for M.K.) and it reflects significant (but unbilled) treatment.  It would not be fair to add to the loss the erroneous billing of 3/5/12 (count 3) and not subtract the work done but not billed on 1/12/12.

Dated: December 17, 2017

//s//_____
                Daniel Horowitz
            Attorney for Vilasini Ganesh