1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>VILASINI GANESH and<br>GREGORY BELCHER,<br><br>        Defendants. | Case No. 16-CR-00211-LHK<br><br>**ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL**<br><br>Re: Dkt. No. 370 |

Before the Court is the Motion for Judgment of Acquittal and/or New Trial of Defendant Vilasini Ganesh ("Ganesh").  ECF No. 370 ("Mot.").  Having considered the submissions of the parties, the record in the case, and the relevant law, the Court hereby DENIES Ganesh's motion.

## I.    BACKGROUND

On May 19, 2016, a federal grand jury returned an eighteen-count Indictment against Gregory Belcher ("Belcher"), an orthopedic surgeon, and Ganesh, a general practitioner.  *See* ECF No. 1.  Generally, the Indictment alleged that Belcher and Ganesh "participated in a scheme to defraud health care benefit programs" by submitting "false and fraudulent claims" for reimbursement to health insurers and "diverting proceeds of the fraud for their personal use."  *Id.*

¶¶ 21–22.  The Indictment charged Belcher and Ganesh with one count of health care fraud conspiracy in violation of 18 U.S.C. § 1349, *id.* ¶¶ 30–31, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), *id.* ¶¶ 36–37, and six counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  *Id.* ¶¶ 38–39.  Beyond that, the Indictment charged Ganesh with five counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2, *id.* ¶¶ 32–33, and five counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035.  *Id.* ¶¶ 34–35.

Subsequently, on July 13, 2017, the government filed a twenty-four count Superseding Indictment against Belcher and Ganesh.  ECF No. 52.  The Superseding Indictment included all the counts charged in the Indictment and added six counts against Belcher.  Specifically, like the Indictment, the Superseding Indictment charged Belcher and Ganesh with one count of health care fraud conspiracy in violation of 18 U.S.C. § 1349 (Count One), *id.* ¶¶ 32–33, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Eighteen), *id.* ¶¶ 38–39, and six counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Counts Nineteen through Twenty-Four).  *Id.* ¶¶ 40–41.  Further, like the Indictment, the Superseding Indictment charged Ganesh with five counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts Two through Six), *id.* ¶¶ 34–35, and five counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035 (Counts Eleven through Fifteen).  *Id.* ¶¶ 36–37.  However, unlike the Indictment, the Superseding Indictment also charged Belcher with four counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts Seven through Ten), *id.* ¶¶ 34–35, and two counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035 (Counts Sixteen through Seventeen).  *Id.* ¶¶ 36–37.

As relevant to the instant motion, each of the five counts charged against Ganesh under § 1347—Counts Two through Six—was based on a different, allegedly fraudulent claim for reimbursement that Ganesh purportedly submitted to one of five health insurers: Anthem Blue Cross, Blue Shield, Cigna, United Health Care ("UHC"), and Aetna.  *Id.* at 10.  Similarly, each of

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

United States District Court
Northern District of California

United States District Court
Northern District of California

the five counts charged against Ganesh under § 1035—Counts Eleven through Fifteen—was premised on a different, allegedly false claim for reimbursement that Ganesh purportedly submitted to one of the health insurers listed above. *Id.* at 11–12.

On December 14, 2016, after a fourteen-day jury trial, the jury convicted Ganesh on (1) all five counts of health care fraud alleged against her under 18 U.S.C. § 1347 (Counts Two through Six); and (2) all five counts of making false statements relating to health care matters alleged against her under 18 U.S.C. § 1035 (Counts Eleven through Fifteen). *See* ECF No. 300. However, the jury acquitted Ganesh on all other counts alleged against her, which included: (1) one count of health care fraud conspiracy (Count One); (2) one count of conspiracy to commit money laundering (Count Eighteen); and (3) six counts of money laundering (Counts Nineteen through Twenty-Four). *See id.* Subsequently, on March 2, 2018, Ganesh filed the instant Motion for Judgment of Acquittal and/or New Trial. *See* Mot. The government opposed Ganesh's motion on March 23, 2018. *See* ECF No. 382 ("Opp."). Ganesh filed a reply on March 29, 2018. *See* ECF No. 387 ("Reply").

## II.    LEGAL STANDARD

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 allows a criminal defendant to move for a judgment of acquittal on the grounds of insufficient evidence after the entry of a guilty verdict. Under Rule 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In deciding a Rule 29 motion, "[t]he district court . . . must bear in mind that it is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Bernhardt*, 840 F.2d 1441, 1448 (9th Cir. 1988). Additionally, a district court may find that "circumstantial evidence and inferences drawn from it" are sufficient to sustain a conviction. *United States v. Reyes-Alvarado*,

3

1   963 F.2d 1184, 1188 (9th Cir. 1992), *as amended* (June 15, 1992).

2   **B.  Motion for a New Trial**

3   Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a

4   new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  The burden of justifying a

5   new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986).

6   The decision to grant a new trial is within the sound discretion of the trial court. *See United States*

7   *v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976), *cert. denied*, 429 U.S. 847 (1976).

8   **III.    DISCUSSION**

9   As explained above, Ganesh has moved for both judgment of acquittal and a new trial.  *See*

10  Mot.  The Court first considers Ganesh's motion for judgment of acquittal.  The Court then

11  considers Ganesh's motion for a new trial.

12  **A.  Ganesh's Motion for Judgment of Acquittal**

13  As discussed above, Ganesh was convicted of five counts of health care fraud in violation

14  of 18 U.S.C. § 1347 (Counts Two through Six) and five counts of making a false statement

15  relating to health care matters in violation of 18 U.S.C. § 1035 (Counts Eleven through Fifteen).

16  Ganesh argues that the Court should enter a judgment of acquittal under Rule 29 for Counts Two,

17  Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen because the evidence that the

18  government presented was insufficient to sustain a guilty verdict as to those counts.  Specifically,

19  Ganesh argues that the evidence supporting all of these counts was insufficient "because the

20  allegedly false or fraudulent statements were not presented to the jury."  Mot. at 15–18.

21  Additionally, Ganesh argues that the evidence supporting Counts Six and Fifteen was also

22  insufficient "because the evidence failed to establish that a claim for payment was submitted to the

23  insurer."  Mot. at 18.  The Court addresses these arguments in turn.

24  **1.  Claims for Reimbursement Not Presented to the Jury**

25  As explained above, the jury found Ganesh guilty on Counts Two, Three, Five, and Six,

26  each of which charged Ganesh with submitting a different fraudulent claim for reimbursement to a

27

28  Case No. 16-CR-00211-LHK
    ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
    TRIAL

United States District Court
Northern District of California

4

health insurer in violation of 18 U.S.C. § 1347. *See* ECF No. 52 at 10; ECF No. 300 at 2–3. 18

U.S.C. § 1347 makes it illegal to "knowingly and willfully execute[], or attempt[] to execute, a

scheme or artifice . . . to obtain, by means of false or fraudulent pretenses, representations, or

promises, any of the money or property owned by, or under the custody or control of, any health

care benefit program[] in connection with the delivery of or payment for health care benefits,

items, or services." At trial, the government presented evidence suggesting that the four claims for

reimbursement underlying Counts Two, Three, Five, and Six were fraudulent in various ways.

For example, for Count Five, the government (1) submitted evidence that Ganesh submitted a

claim for reimbursement to UHC for services purportedly provided on February 17, 2014 to a

patient named Ann Dwan; and (2) presented testimony from Ann Dwan stating that she was

actually out of the country from February 4, 2014 to February 27, 2014, which suggests that she

could not have received any services from Ganesh on February 17, 2014. *See* ECF No. 348, Nov.

13, 2017 Transcript at 88–89 (testimony of Ann Dwan stating that she was traveling outside of the

United States "February the 4th to February the 27th" of 2014 because she "had a number of

things to do, as well as checking on [her] mother" in England).

However, the government did not submit any of the four claims for reimbursement

underlying Counts Two, Three, Five, and Six—meaning the four actual HCFA Form 1500s that

Ganesh filled out and sent to insurers—into evidence. Instead, the government submitted

spreadsheets that were pulled from the insurers' claims databases and therefore reflect the contents

of the four claims for reimbursement—as recorded and stored by the insurers—at issue in Counts

Two, Three, Five, and Six. Further, the government submitted the explanation of benefit

documents ("EOBs") issued by the insurers that correspond to each of the four claims. Like the

spreadsheets, the EOBs are derived from the insurers' claims databases. *See* ECF No. 352, Nov.

20, 2017 Transcript at 189 (testimony of Tammy Kahler, a member of the unit at Cigna that

reviewed potentially false claims, affirming that EOBs "express[] the underlying data that's in the

spreadsheets"). As a result, the EOBs also reflect the contents of the four claims at issue in

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL

1    Counts Two, Three, Five, and Six as they were recorded and stored in the insurers' claims
2    databases.

3         Similarly, the jury found Ganesh guilty on Counts Twelve, Thirteen, Fourteen, and Fifteen,
4    each of which charged Ganesh with submitting a different false claim for reimbursement in
5    violation of 18 U.S.C. § 1035.  *See* ECF No. 52 at 11–12; ECF No. 300 at 5–6.  18 U.S.C. § 1035
6    makes it illegal to "knowingly and willfully . . . make[] or use[] any materially false writing or
7    document knowing the same to contain any materially false, fictitious, or fraudulent statement or
8    entry[] in connection with the delivery of or payment for health care benefits, items, or services."
9    18 U.S.C. § 1035(a)(2).  Like with the four claims underlying Counts Two, Three, Five, and Six,
10   the government presented evidence at trial suggesting that the four claims for reimbursement
11   underlying Counts Twelve, Thirteen, Fourteen, and Fifteen were false in various ways.  However,
12   again similar to Counts Two, Three, Five, and Six, the government did not present to the jury any
13   of the four claims for reimbursement underlying Counts Twelve, Thirteen, Fourteen, and Fifteen,
14   and instead submitted spreadsheets and EOBs that reflect the contents of those four claims as
15   recorded and stored by the insurers that received those claims.

16        Ganesh argues that she is entitled to judgment of acquittal as to Counts Two, Three, Five,
17   Six, Twelve, Thirteen, Fourteen, and Fifteen because the government "failed to present to the jury
18   the false or fraudulent statement[s]" underlying each of those counts.  Mot. at 15.  The government
19   counters that although it did not submit the actual claims for reimbursement into evidence, it
20   submitted sufficient circumstantial evidence of the contents of those claims—in the form of
21   spreadsheets and EOBs derived from the insurers' claims databases—to support all of Ganesh's
22   convictions.  Opp. at 7–11.  For the reasons stated below, the Court agrees with the government.

23        It is well-established that "[c]ircumstantial evidence is sufficient to sustain a conviction,
24   and the government's evidence need not exclude every reasonable hypothesis consistent with
25   innocence."  *United States v. Talbert*, 710 F.2d 528, 530 (9th Cir. 1983).  Indeed, the United States
26   Supreme Court has remarked that "[c]ircumstantial evidence is not only sufficient, but may also be

27
28

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL

United States District Court
Northern District of California

United States District Court
Northern District of California

1    more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers,*

2    *Inc.*, 364 U.S. 325, 330 (1960).  In the instant case, although the government did not submit the

3    most direct evidence of the contents of the claims for reimbursement underlying Counts Two,

4    Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen—i.e., the claims themselves—the

5    government presented considerable circumstantial evidence of the contents of those claims.  As

6    discussed above, the government submitted spreadsheet entries and EOBs corresponding to the

7    specific claims at issue in the instant case.  Further, the government presented evidence indicating

8    that these spreadsheet entries and EOBs contain accurate representations of the contents of those

9    claims.[1]

10       Specifically, the government elicited testimony from employees of the insurers explaining

11    that upon receiving a claim for reimbursement from a health care provider (including the claims at

12    issue), each insurer would record and store the contents of the claim in a claims database.  *See*

13    ECF No. 350, Nov. 14, 2017 Transcript at 167–68 (testimony of Kathy Richer, a supervisor in

14    Aetna's special investigations unit); ECF No. 351, Nov. 20, 2017 Transcript at 79–80 (testimony

15    of Jacob Kearney, a manager of the special investigative unit of UHC); ECF No. 352, Nov. 20,

16    2017 Transcript at 175–76 (testimony of Tammy Kahler of Cigna); ECF No. 354, Nov. 21, 2017

17    Transcript at 4–6 (testimony of Alex Kondratenko, a senior investigator for Blue Shield of

18    California); ECF No. 355, Nov. 21, 2017 Transcript at 82–85 (testimony of Julia Haskins, a senior

19    investigator for Anthem Blue Cross).  Further, all of these employees testified that the contents of

20    all claims for reimbursement were accurately recorded in the insurers' claims databases because

21    accuracy was important for both the insurers' business and for beneficiaries.  *See id.*  Additionally,

22    the employees' testimony indicated that the spreadsheet entries that the government presented to

23    the jury were pulled from, and thus were compilations or excerpts of, the insurers' claims

24

25    ---

26    [1] The Court further notes that the government elicited testimony from the patients who purportedly received the services identified in the EOBs, and showed the EOBs to those patients.  *See, e.g.*,

27    ECF No. 347, November 7, 2017 Transcript at 239–40 (testimony of Ms. Surekha Soni about an EOB from Anthem reflecting that Anthem had paid a claim for services rendered to Ms. Soni).

28    Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

United States District Court
Northern District of California

1   databases.  *See* ECF No. 350, Nov. 14, 2017 at 208 (testimony of Ms. Richer); ECF No. 351, Nov.

2   20, 2017 Transcript at 81 (testimony of Mr. Kearney); ECF No. 352, Nov. 20, 2017 Transcript at

3   175 (testimony of Ms. Kahler); ECF No. 354, Nov. 21, 2017 Transcript at 9 (testimony of Mr.

4   Kondratenko); ECF No. 355, Nov. 21, 2017 Transcript at 83 (testimony of Ms. Haskins).  Finally,

5   the employees testified that the EOBs that the government submitted into evidence also accurately

6   reflect the contents of the specific claims at issue in the instant case.  *See* ECF No. 350, Nov. 14,

7   2017 at 188 (testimony of Ms. Richer); ECF No. 351, Nov. 20, 2017 Transcript at 78 (testimony

8   of Mr. Kearney); ECF No. 352, Nov. 20, 2017 Transcript at 188–89 (testimony of Ms. Kahler);

9   ECF No. 354, Nov. 21, 2017 Transcript at 22 (testimony of Mr. Kondratenko); ECF No. 355, Nov.

10  21, 2017 Transcript at 80–82 (testimony of Ms. Haskins).  Some of this testimony indicated that

11  the EOBs, like the spreadsheets, were derived from the insurers' claims databases.  *See* ECF No.

12  352, Nov. 20, 2017 Transcript at 189 (testimony of Ms. Kahler, a member affirming that EOBs

13  "express[] the underlying data that's in the spreadsheets").

14          In sum, the government presented a substantial amount of evidence indicating that the

15  spreadsheets and EOBs submitted by the government are accurate representations of the contents

16  of the claims at issue in the instant case because (1) the spreadsheet entries and EOBs were

17  derived from the insurers' own internal claims databases; and (2) these claims databases contain

18  generally accurate records of all claims submitted to the insurers by health care providers.  Thus,

19  contrary to Ganesh's argument, the Court finds that these spreadsheets and EOBs constitute

20  sufficient circumstantial evidence of the contents of the claims for reimbursement underlying

21  Counts Two, Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen.

22          Ganesh's Rule 29 motion points to no specific reason to doubt the accuracy of the

23  spreadsheets, the EOBs, or the insurers' claims databases.  However, Ganesh's reply brief

24  belatedly attempts to identify "internal contradictions and patent inaccuracies in the source

25  spreadsheets themselves."[2]  Reply at 4.  Specifically, Ganesh points to several spreadsheets that

26

27  _____
    [2] Before Ganesh filed her March 29, 2018 reply brief, Ganesh moved on March 9, 2018 for leave

28  Case No. 16-CR-00211-LHK
    ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
    TRIAL

1    include entries "identifying Dr. DeWees as the rendering physician at the Campbell Family

2    Practice location" or "at the zip code associated with the Campbell Family Practice."  Reply at 4–

3    5.  Ganesh argues that these entries contradict the government's theory that Ganesh submitted

4    claims that improperly identified Dr. DeWees (instead of Ganesh herself) as the rendering

5    physician because "there was no evidence that [] Ganesh ever worked at or submitted claims for

6    work performed at [Campbell Family Practice]."  *Id.* at 5.  Ganesh also appears to assert that these

7    particular spreadsheet entries somehow demonstrate that the spreadsheets are inaccurate because

8    they show claims identifying Dr. DeWees as the rendering physician from two different locations

9    during the same time period, one of which was never tied to Ganesh.  *See id.* at 4–5.

10           Ganesh's argument is not well-taken.  Ganesh acknowledges in her reply brief that "[a]fter

11   leaving the Campbell Medical Group in Saratoga, Dr. DeWees moved to the Campbell Family

12   Practice in Campbell."  Reply at 4 n.3.  Thus, the spreadsheet entries that "identify[] Dr. DeWees

13   as the rendering physician at the Campbell Family Practice location," Reply at 5, simply reflect

14   Dr. DeWees's own legitimate billing activities after Dr. DeWees moved to Campbell Family

15   Practice, and do not contradict the government's theory that Ganesh submitted false claims *from*

16   *another location* that improperly identified Dr. DeWees as the rendering physician.  In other

17   words, the spreadsheets illustrate *both* (1) "how Ganesh billed for Dr. DeWees' purported medical

18   services"; and (2) "what Dr. DeWees' actual billing and true medical services were" during the

19   same time period—including when Dr. DeWees moved to Campbell Family Practice.  ECF No.

20   376 at 2; *see also id.* ("Ganesh confuses . . . the data points in the Source Spreadsheets that

21

22   to file a supplemental memorandum in order to discuss these same "internal contradictions and
     patent inaccuracies" in the spreadsheets.  *See* ECF No. 374.  The Court denied Ganesh's motion

23   on March 12, 2018.  ECF No. 378.  Undeterred, Ganesh filed a March 29, 2018 reply brief
     discussing these purported problems even though the Court never authorized Ganesh to file a reply

24   brief.  *See* ECF No. 366 (order directing Ganesh to file her Motion for Judgment of Acquittal
     and/or New Trial by February 28, 2018 and directing the government to respond by March 26,

25   2018, and setting a hearing on Ganesh's motion for April 10, 2018, but never setting a deadline to
     file a reply brief).  Nonetheless, the Court addresses Ganesh's arguments regarding the alleged

26   inaccuracies and contradictions in the spreadsheets—which were first raised in Ganesh's motion
     for leave to file a supplemental memorandum, and then again in Ganesh's reply brief—in this

27   order.

28   Case No. 16-CR-00211-LHK
     ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
     TRIAL

1   illustrate when Dr. Ganesh billed as if Dr. DeWees provided [] care, and the Spreadsheets that

2   showed when he actually provided [] care, including when he associated himself with another

3   medical practice [(Campbell Family Practice)] after separating from Ganesh.").  As a result, the

4   fact that the spreadsheets include entries "identifying Dr. DeWees as the rendering physician at the

5   Campbell Family Practice location" or "at the zip code associated with the Campbell Family

6   Practice" does not demonstrate that the spreadsheets are inaccurate or internally inconsistent.

7   Reply at 4–5.

8           Accordingly, the Court concludes that there was sufficient circumstantial evidence of the

9   contents of the claims underlying Counts Two, Three, Five, Six, Twelve, Thirteen, Fourteen, and

10  Fifteen to support Ganesh's convictions on those counts.[3]

11          **2.  Counts Six and Fifteen**

12          Ganesh further argues that "the evidence supporting Counts Six and Fifteen was

13  insufficient because the evidence failed to establish that a claim for payment was submitted to the

14  insurer."  Mot. at 18.  Specifically, Ganesh states that the "Aetna source spreadsheets that were

15  introduced into evidence . . . reflect that the billed amount for the claim[s] [at issue in Counts Six

16  and Fifteen] was zero dollars."  *Id.*  Based on these zero-dollar amounts, Ganesh argues that with

17  regard to the claims for reimbursement underlying Counts Six and Fifteen, "[t]here was no attempt

18  'to obtain money or property' as required for a Health Care Fraud offense (§ 1347) and there was

19  no false statement 'in connection with the delivery of or payment for health care benefits' as

20  required for a False Statement Offense (§ 1035)."  *Id.*  Consequently, Ganesh asserts that "a

21  judgment of acquittal must be entered on these counts."  *Id.*

22          Ganesh's argument is unavailing because the government introduced evidence indicating

23

24  ─────────────────

25  [3] In the section of her motion discussing the insufficiency of the evidence supporting Counts Two, Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen, Ganesh also reasserts her objection to the admission of the spreadsheets on Confrontation Clause grounds.  *See* Mot. at 15.  Because Ganesh's Confrontation Clause objection does not assert that the admitted evidence underlying Ganesh's convictions was insufficient, the Court will address Ganesh's Confrontation Clause objection below in the section discussing Ganesh's motion for a new trial.

26

27

28  Case No. 16-CR-00211-LHK
    ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

United States District Court
Northern District of California

that the claims for reimbursement at issue in Counts Six and Fifteen *did* in fact seek payment of some amount of money.  As to Count Six, the claim for reimbursement underlying this count was a claim submitted by Ganesh that (1) sought reimbursement from Aetna for services provided on September 21, 2012 to Sarini Kakkar; and (2) was paid on January 2, 2013.  ECF No. 52 at 10.  The government provided proof of this specific claim in the form of an EOB that was mailed to Ganesh by Aetna.  This EOB was admitted as pages 649 to 662 of government's Exhibit 32.  *See* ECF No. 382-6.  As relevant to Count Six, the EOB contains an entry that describes a claim for reimbursement for services provided to Ms. Kakkar on "9/21/12" that was paid on "01/02/2013." *Id.* at GB-008206.  Importantly, the entry also states that the "Submitted Charges" for this claim was "300.00," that the "Negotiated Amount" for the claim for "223.04," and that the amount paid to Ganesh for this claim was "$203.04." *Id.*  Thus, this EOB—which was presented to the jury and submitted into evidence—indicates that the claim at issue in Count Six "sought—and resulted in—payment to Ganesh."  Opp. at 17.  Further, as discussed above, the government elicited testimony from employees of the insurers, including Ms. Richer of Aetna, indicating that the EOBs submitted by the government accurately reflect the contents of the claims at issue in the instant case.

Similarly, as to Count Fifteen, the claim for reimbursement underlying this count was a claim that Ganesh submitted to Aetna on December 10, 2012 for services provided to Ms. Kakkar on September 19, 2012.  ECF No. 52 at 12; ECF No. 361 at 100.  The government presented proof of this specific claim in the same EOB described above that was admitted as pages 649 to 662 of government's Exhibit 32.  *See* ECF No. 382-6.  As relevant to Count Fifteen, the EOB contains an entry that describes a claim for reimbursement for services provided to Ms. Kakkar on "9/19/12" that was received by Aetna on "12/10/12." *Id.* at GB-008206.  The entry also states that the "Submitted Charges" for this claim was "300.00," that the "Negotiated Amount" for the claim for "223.04," and that the amount paid to Ganesh for this claim was "$203.04." *Id.*  Thus, by presenting the EOB to the jury, the government offered evidence indicating that the claim at issue

11

1   in Count Fifteen "sought—and resulted in—payment to Ganesh."  Opp. at 17.

2          Additionally, the government points to a "simple explanation" for why the Aetna

3   spreadsheet entries corresponding to the claims at issue in Counts Six and Fifteen appear to reflect

4   that the billed amounts for these claims was zero dollars even though, as discussed above, the

5   EOB entries for those same two claims reflect the amounts billed by and paid to Ganesh.  *Id.* at 18.

6   Specifically, the government highlights the fact that, while the Aetna spreadsheet entries (found in

7   government's Exhibit 15b) list claim numbers for those two claims ending in "01," *see* ECF No.

8   370-1, Exh. A; ECF No. 387-1, the EOB entries list claim numbers for those two claims ending in

9   "00."  *See* ECF No. 382-6 at GB-008206.  Then, the government points to the trial testimony of

10  Ms. Richer of Aetna, stating that: (1) after a health care provider submits a claim for

11  reimbursement to Aetna, Aetna may request additional information from the provider to support

12  the claim; (2) if the provider submits additional information or re-submits the claim, a new entry

13  corresponding to that submission or re-submission will be generated in Aetna's database; and (3)

14  the new entry will be assigned a claim number that has the "same first prefix" as the original

15  claim's number, but a different "last couple of digits."  ECF No. 350, Nov. 14, 2017 Transcript at

16  236–41.  Taken together, this evidence suggests that the spreadsheet entries for the two claims—

17  which end in "01" and show billed amounts of zero dollars—"merely reflect[] that Ganesh

18  resubmitted the claims or information supporting the claims," while the EOB entries for the same

19  two claims—which end in "00"—reflect the "original" claims that Ganesh submitted, and

20  therefore reflect the true (non-zero) amounts billed by and paid to Ganesh for those claims.  Opp.

21  at 19.

22         For these reasons, the Court finds that there was sufficient evidence for a reasonable jury to

23  conclude that Ganesh sought payment for the claims underlying Counts Six and Fifteen.

24  Accordingly, the Court DENIES Ganesh's motion for judgment of acquittal.

25      **B.  Ganesh's Motion for a New Trial**

26         Ganesh argues that she is entitled to a new trial on four grounds.  First, Ganesh reasserts all

27

28  Case No. 16-CR-00211-LHK
    ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
    TRIAL

United States District Court
Northern District of California

the arguments that she raises in her motion for judgment of acquittal. Mot. at 18 n.1. Second, Ganesh contends that the admission of the spreadsheets reflecting the content of the claims submitted by Ganesh to the insurers violated Ganesh's Confrontation Clause rights under the Sixth Amendment. *Id.* at 15. Third, Ganesh argues that the government "constructively amended the indictment as to Counts Eleven and Twelve." *Id.* at 19–21. Fourth, Ganesh contends that the Court erred by failing to *sua sponte* "give a specific unanimity instruction requiring the jury to agree which if any statements were false or fraudulent." *Id.* at 21–24. The Court addresses each argument in turn.

### 1. Reasserted Arguments

First, Ganesh argues that the Court should grant her a new trial because, for the reasons asserted in Ganesh's motion for judgment of acquittal, the weight of the evidence militates against Ganesh's convictions on Counts Two, Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen. *See* Mot. at 18 n.1. When a defendant moves for a new trial based on the weight of the evidence, a court may grant the defendant a new trial if it "'concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.'" *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). In other words, a motion for a new trial based on the weight of the evidence may be granted "in exceptional circumstances in which the evidence weighs heavily against the verdict." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). In the Court's discussion of Ganesh's motion for judgment of acquittal above, the Court explained why there was sufficient evidence to support Ganesh's convictions on Counts Two, Three, Five, Six, Twelve, Thirteen, Fourteen, and Fifteen. For those same reasons, the Court finds that the instant case does not present one of the "exceptional circumstances" in which the evidence weighs so "heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* at 1153; *Alston*, 974 F.2d at 1210. As a result, the Court concludes that Ganesh is not entitled to a new trial based

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

United States District Court
Northern District of California

1   on her arguments regarding the weight of the evidence.

2       **2. Spreadsheets**

3       Ganesh also argues that the admission of the spreadsheets reflecting the content of the

4   claims for reimbursement that Ganesh submitted to the insurers violated her rights under the

5   Confrontation Clause.  Mot. at 15.  However, Ganesh acknowledges that "[t]his Court has now

6   twice overruled [] objections to introduction of the insurers' source spreadsheets," Mot. at 15—

7   once before trial, *see* ECF No. 149 at 5, and once in the Court's order denying Defendant

8   Belcher's Motion for Judgment of Acquittal and/or New Trial.  *See* ECF No. 361 at 19–21.

9       For the same reasons discussed in the Court's two previous orders overruling this

10   particular Confrontation Clause challenge to the spreadsheets, the Court disagrees with Ganesh

11   that the admission of the spreadsheets violated her Confrontation Clause rights.  In response to the

12   government's indication that it would seek to admit the spreadsheets into evidence at trial as

13   authenticated business records, *see* ECF No. 124 at 3–7, Defendant Belcher (but not Defendant

14   Ganesh) objected to the spreadsheets on Confrontation Clause grounds.  *See* ECF No. 143 at 7–9.

15   Specifically, Belcher argued that the spreadsheets cannot be considered records kept in the

16   ordinary course of business.  Instead, Belcher asserted that because the spreadsheets were

17   "prepared in response to a grand jury subpoena and were at all times intended by the government

18   for later use at trial," the spreadsheets were "testimonial statements" that could not be admitted

19   into evidence unless the maker of the spreadsheets appeared at trial and was subject to cross-

20   examination.  *Id.* at 8.  In overruling Belcher's objection, the Court observed that "the

21   spreadsheets are composed of entries from databases of claims submissions kept by various health

22   insurers, and thus the entries themselves are business records."  ECF No. 149 at 5.  Accordingly,

23   the Court concluded that "even if the spreadsheets were intended by the government for use at

24   trial, the spreadsheets are merely compilations of business records and therefore are admissible

25   absent confrontation."  *Id.*

26       Belcher renewed his Confrontation Clause objection to the spreadsheets in his Motion for

27

28
Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL

*United States District Court*
*Northern District of California*

1  Judgment of Acquittal and/or New Trial, ECF No. 338 at 28–29, and the Court reiterated its

2  conclusion that the spreadsheets were "admissible as business records" because they "are merely

3  compilations of business records—they are nothing but compilations of the claims that Belcher

4  and Ganesh submitted to the insurers, as reflected in their claims databases."  ECF No. 361 at 20.

5  The Court also noted that "[t]he Ninth Circuit has provided clear and direct guidance on this

6  issue."  *Id.*  Specifically, the Court pointed to *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576

7  F.3d 1040 (9th Cir. 2009), in which the Ninth Circuit explained:

8
> We have made clear that for purposes of Rule 803(6), it is immaterial that the
9
> business record is maintained in a computer rather than in company books.  A
> logical extension on that principle is that evidence that has been compiled from the
10
> computer database is also admissible as a business record, provided it meets the
> criteria of Rule 803(6).

11  *Id.* at 1043 (citations and quotations omitted, emphasis added).  Moreover, in the same paragraph,

12  the Ninth Circuit also quoted with approval a passage from Weinstein's Federal Evidence stating

13  that "printouts prepared specifically for litigation from databases that were compiled in the

14  ordinary course of business are admissible as business records to the same extent as if the

15  printouts were, themselves, prepared in the ordinary course of business.  The important issue is

16  whether the database, not the printout from the database, was compiled in the ordinary course of

17  business."  *Id.* (quoting B. Weinstein and M.A. Berger, *Weinstein's Federal Evidence* § 901.08[1]

18  (2d ed. 2006)).  Thus, as the Court explained in its order denying Belcher's Motion for Judgment

19  of Acquittal and/or New trial, "even though the spreadsheets in the instant case were prepared

20  specifically for litigation, they were nonetheless admissible as business records because they are

21  merely select portions of claims databases that are themselves business records."  ECF No. 361 at

22  21.  Further, "because the spreadsheets were admissible as business records, they are not

23  'testimonial statements' and thus were admissible absent confrontation.'"  *Id.* (citing *Crawford v.*

24  *Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by

25  their nature were not testimonial—for example, business records or statements in furtherance of a

26  conspiracy.").

27                                                    15

28  Case No. 16-CR-00211-LHK
   ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
   TRIAL

United States District Court
Northern District of California

1        The same reasoning applies to Ganesh's identical Confrontation Clause challenge.  Despite

2  the fact that they "were prepared specifically for litigation," the spreadsheets that reflected the

3  contents of the claims for reimbursement underlying Ganesh's counts of conviction "were

4  nonetheless admissible as business records because they are merely select portions of claims

5  databases that are themselves business records."  *Id.*  And because the spreadsheets were

6  admissible as business records, they are not "testimonial statements" and thus were admissible

7  absent confrontation.  *See Crawford*, 541 U.S. at 56.  As a result, Ganesh's Confrontation Clause

8  rights were not violated when the Court admitted the spreadsheets into evidence without requiring

9  the maker of the spreadsheets to appear at trial and be subject to cross-examination.  Thus, the

10  Court concludes that Ganesh is not entitled to a new trial based on her Confrontation Clause

11  challenge to the spreadsheets.

12        **3.  Constructive Amendment**

13        Next, Ganesh argues that she is entitled to a new trial on Counts Eleven and Twelve

14  because the government constructively amended the indictment as to those counts.  Mot. at 19–21.

15  Specifically, Ganesh points to a chart in the section of the Superseding Indictment describing

16  "Counts Eleven Through Seventeen."  *See* ECF No. 52 at 11–12.  For each of Counts Eleven

17  through Seventeen, the chart lists, inter alia, the "Nature of Proof of False Representation."  *See id.*

18  Further, the chart lists "[i]mpermissible usage of [Tax Identification Number ("TIN")] associated

19  with another provider" in the "Nature of Proof of False Representation" boxes for both Counts

20  Eleven and Twelve.  *Id.* at 11.  However, Ganesh asserts that the government deviated from this

21  "theory of the indictment" at trial.  Mot. at 20.  In particular, Ganesh asserts that instead of arguing

22  and presenting evidence that the claims for reimbursement underlying Counts Eleven and Twelve

23  were false because Ganesh listed in those claims a TIN associated with another provider, the

24  government "called . . . for the jury to convict Dr. Ganesh on these counts based on the assertion

25  that the submitted claims falsely asserted that the patients were seen by Dr. DeWees, when in fact

26  they were not."  *Id.*  Consequently, Ganesh insists that "[t]he government's shift from the theory

27

28
Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL

1    of the indictment (i.e. that Dr. Ganesh fraudulently used a different doctor's TIN to bill) to the

2    theory presented to the jury (i.e. that Dr. Ganesh falsely identified Dr. DeWees as the rendering

3    physician)" amounted to a constructive amendment of the Superseding Indictment as to Counts

4    Eleven and Twelve.  *Id.*

5           For its part, the government argues that it did not constructively amend the Superseding

6    Indictment by asserting a false-identification-of-rendering-physician theory for Counts Eleven and

7    Twelve because that theory of falsity was also alleged in the Superseding Indictment.  Opp. at 20–

8    23.  Specifically, paragraph 24 of the Superseding Indictment alleges, among other things, that

9    Ganesh "submitted and caused to be submitted to [insurers] false claims for services that [Ganesh]

10   knew were not properly payable because . . . [Ganesh] represented that the patient beneficiaries

11   were seen by another physician provider (not herself) no longer affiliated with [Ganesh] and her

12   practice at CMG."  ECF No. 52 ¶ 24.  Further, although this theory of falsity is not listed

13   anywhere in the chart describing Counts Eleven through Seventeen, the first paragraph of the

14   "Counts Eleven Through Seventeen" section of the Superseding Indictment—paragraph 36—re-

15   alleges and incorporates all previous paragraphs of the indictment, including paragraph 24.  *Id.* ¶

16   36 (stating that "[p]aragraphs 1 through 35 are re-alleged and incorporated as if fully set forth

17   here").  Based on this, the government argues that "there was no disconnect between the

18   Superseding Indictment and the proof at trial" regarding Counts Eleven and Twelve.  Opp. at 22.

19          The Court agrees with the government.  As an initial matter, the Court notes that Ganesh

20   candidly acknowledges that Ganesh did not raise this objection any time before or during trial.

21   Mot. at 20 (stating that "defense counsel raised concerns regarding the possibility of a constructive

22   amendment of the False Statement charges in Counts Eleven through Fifteen" "prior to the

23   submission of the case to the jury," but that "counsel expressly excluded the issue raise[d] here—

24   i.e. the TIN—from his argument").  Further, the Court notes that the government argued and

25   offered evidence at trial that Ganesh fraudulently used Dr. DeWees's TIN, and therefore did not

26   abandon this theory falsity at trial.  *See, e.g.*, ECF No. 382-1, Nov. 21, 2017 Transcript at 223–26

27

28   Case No. 16-CR-00211-LHK
     ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
     TRIAL

United States District Court
Northern District of California

17

1    (testimony of government's financial expert, Ms. Kikugawa).  Indeed, the theory that Ganesh

2    fraudulently used Dr. DeWees's TIN is not a separate concept from the theory that Ganesh falsely

3    identified Dr. DeWees as the rendering physician.  They are part and parcel of the same theory of

4    falsity charging that, in order to receive reimbursement, Ganesh had to pretend to be another

5    medical provider because the insurance companies were not paying Ganesh's claims.  Specifically,

6    she claimed to be Dr. DeWees and used Dr. DeWees's TIN in her claims for reimbursement to

7    insurance companies.  Most importantly, as explained below, the Court has already opined on this

8    issue in its December 11, 2017 order denying Ganesh's motion to limit the government to a strict

9    reading of Counts Eleven through Seventeen.  *See* ECF No. 285.

10          A constructive amendment occurs if "there is a complex of facts presented at trial distinctly

11   different from those set forth in the [indictment]," or if "the crime charged [in the indictment] was

12   substantially altered at trial, so that it was impossible to know whether the grand jury would have

13   indicted for the crime actually proved."  *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir.

14   2002) (second alteration in original).  Put more succinctly, "a constructive amendment involves a

15   difference between the pleading and proof so great that it essentially changes the charge."  3

16   Charles Alan Wright & Sarah N. Welling, Federal Practice and Procedure, Criminal § 516 (4th ed.

17   2011).  However, "[w]hen a statute specifies two or more ways in which an offense may be

18   committed, all may be alleged in the conjunctive in one count and proof of any of those acts

19   conjunctively charged may establish guilt."  *United States v. Urrutia*, 897 F.2d 430, 432 (9th Cir.

20   1990).  For example, in *United States v. Miller*, 471 U.S. 130 (1985), the United States Supreme

21   Court stated that it "has long recognized that an indictment may charge numerous offenses or the

22   commission of any one offense in several ways."  *Id.* at 136.  "As long as the crime and the

23   elements of the offense that sustain the conviction are fully and clearly set out in the indictment,

24   the right to a grand jury is not normally violated by the fact that the indictment alleges more

25   crimes or other means of committing the same crime."  *Id.*

26          On December 10, 2017—near the conclusion of trial, and two days before closing

27                                                      18

28   Case No. 16-CR-00211-LHK
     ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
     TRIAL

United States District Court
Northern District of California

arguments—Ganesh filed a "Brief on Constructive Amendment(s)" requesting the Court to "strictly limit the government to the articulated theories of culpability for Counts 11–17." ECF No. 264.  The next day, the government filed an opposition to Ganesh's request.  ECF No. 272.  In its opposition, the government asserted that it was "free to argue all of the theories" of falsity identified in paragraph 24 of the Superseding Indictment "as to all counts of alleged falsity."  *Id.* at 10.  Then, in its December 11, 2017 order denying Ganesh's request to limit the government to a strict reading of Counts Eleven through Seventeen, the Court agreed with the government.  Specifically, the Court ruled that because "Counts 11–17 incorporated by reference paragraph[] 24 . . . of the [S]uperseding [I]ndictment," the Superseding Indictment provided Ganesh "with sufficient notice" that, in defending against Counts Eleven through Fifteen, Ganesh might have to defend against the theories of falsity alleged in paragraph 24 that pertain to her.  ECF No. 285 at 3 (citing *Miller*, 471 U.S. at 136–37).  In other words, the Court ruled that for Counts Eleven through Fifteen, the government could validly assert any theory of falsity alleged against Ganesh in paragraph 24 without constructively amending the Superseding Indictment as to those counts.

For the same reasons discussed in the Court's December 11, 2017 order, the Court finds that the government did not constructively amend the Superseding Indictment as to Counts Eleven and Twelve by arguing and offering evidence to support the theory that the claims underlying those counts were false because they identified the wrong rendering physician.  This specific theory of falsity was alleged against Ganesh in paragraph 24 of the Superseding Indictment, and the first paragraph of the section of the Superseding Indictment describing "Counts Eleven Through Seventeen"—paragraph 36—incorporated paragraph 24 by reference.  ECF No. 52 at 11.  Thus, there was no "complex of facts presented at trial" that was "distinctly different from those set forth in the [indictment]," nor was there any crime that was charged in the indictment but "substantially altered at trial."  *Adamson*, 291 F.3d at 615.  As a result, the Court concludes that Ganesh is not entitled to a new trial on Counts Eleven and Twelve based on her constructive amendment challenge to those counts.

19

### 4. Specific Unanimity Instruction

Finally, Ganesh argues that she is entitled to a new trial on all of her counts of conviction because the Court failed to give any specific unanimity instruction to the jury. Mot. at 21–24. However, Ganesh concedes that although Ganesh's trial counsel "raised the question whether a specific unanimity instruction was required for the money laundering counts" against Ganesh during the trial, Ganesh's trial counsel never raised any "issue regarding a specific unanimity [instruction] as to" any of the counts on which she was ultimately convicted—that is, "Counts Two through Six and Eleven through Fifteen." *Id.* at 23 n.2. Thus, Ganesh's argument amounts to an assertion that the Court should have *sua sponte* given a specific unanimity instruction that was not requested by either party at any point before or during trial, and that the Court's failure to do so entitles Ganesh to a new trial on all the counts on which she was convicted.

"In the ordinary case, a general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict." *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999). The Ninth Circuit has held that a specific unanimity instruction is required only when it appears that "'there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts.'" *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989) (quoting *United States v. Echeverry*, 719 F.2d 974, 974 (9th Cir. 1983)).

In her motion for new trial, Ganesh insists that a specific unanimity instruction was required as to all of her counts of conviction (Counts Two through Six and Eleven through Fifteen). Mot. at 23. Ganesh points to Counts Eleven and Twelve as the counts that "most starkly" illustrate why a specific unanimity instruction was required. *Id.* In particular, Ganesh argues that although Counts Eleven and Twelve each alleged multiple theories of falsity, including "impermissible use of another doctor's TIN," at trial, "the government did not attempt to prove the allegation of fraudulent use of a TIN and did not argue that issue to the jury." *Id.* Instead, according to Ganesh, the government sought to prove Ganesh's guilt on Counts Eleven and

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

United States District Court
Northern District of California

1    Twelve based on other theories of falsity alleged in the Superseding Indictment—specifically, that

2    Ganesh "misrepresented Dr. DeWees as the rendering physician" and "used the wrong CPT

3    codes" in those claims.  *Id.*  Ganesh argues that this "created an undue risk that one or more jurors

4    voted to convict [Ganesh] for an impermissible reason"—namely, based on a theory of falsity that

5    was alleged in the Superseding Indictment but purportedly abandoned by the government at trial.

6    *Id.*  Thus, Ganesh asserts that a specific unanimity instruction was necessary to mitigate this

7    "undue risk."  *Id.*  Ganesh makes the same basic argument for all of her other counts of conviction.

8    *See id.* at 30.

9           The Court is not persuaded by Ganesh's argument.  As an initial matter, the Court notes

10   again that the government argued and offered evidence at trial both (1) that Ganesh fraudulently

11   used Dr. DeWees' TIN, *see, e.g.*, ECF No. 382-1, Nov. 21, 2017 Transcript at 223–26 (testimony

12   of government's financial expert, Ms. Kikugawa); and (2) that Ganesh used incorrect CPT codes

13   in some of the claims at issue.  *See, e.g.*, ECF No. 361, December 12, 2017 Transcript at 96–97

14   (government's assertion during closing argument that the claim for reimbursement underlying

15   Count Eleven is "false because it uses the same CPT codes that we talked about earlier that were

16   inappropriately used").  Indeed, as the Court expressed above, the assertion that Ganesh

17   fraudulently used Dr. DeWees' TIN and the assertion that Ganesh misrepresented Dr. DeWees as

18   the rendering physician are part and parcel of the same theory of falsity, and are not distinct or

19   separate concepts.  Therefore, Ganesh's implication that the government abandoned these theories

20   of falsity at trial is incorrect.  Further, and more importantly, even assuming that the government

21   did abandon some theories of falsity alleged in the Superseding Indictment at trial, because the

22   Court did not give or read the Superseding Indictment to the jury, there could not possibly have

23   been *any* risk—let alone an "undue risk"—of any juror voting to convict Ganesh based on a theory

24   that was alleged in the Superseding Indictment but not argued at trial.  Specifically, in response to

25   Defendant Belcher's pre-trial motion in limine requesting the Court to "read the indictment to the

26   jury" instead of giving the jury a copy of the indictment, ECF No. 126 at 15, the Court granted

27

28   Case No. 16-CR-00211-LHK
     ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
     TRIAL

United States District Court
Northern District of California

1   Belcher's request and stated that "[t]he Court's practice is not to send the indictment into the jury

2   room during deliberations" *and* "not to read the indictment to the jury."  ECF No. 149 at 13.  The

3   Court further asked: "Do the parties want the Court to read the indictment to the jury?"  *Id.*  Later,

4   at the pretrial conference, no party requested that the Superseding Indictment be read to the jury.

5   Thus, the jury was never read or given the Superseding Indictment.  As a result, no juror could

6   have voted to convict Ganesh on any theory of falsity in the Superseding Indictment that was not

7   argued at trial.

8           For good measure, the Court notes that Ganesh's argument could also be construed to

9   assert that a specific unanimity instruction was required because some theories of falsity that the

10  government argued at trial—specifically, that Ganesh "misrepresented Dr. DeWees as the

11  rendering physician" and that Ganesh "used the wrong CPT codes"—were not alleged in the

12  Superseding Indictment.  Mot. at 23.  In other words, Ganesh could be arguing that (1) as to her

13  counts of conviction (Counts Two through Six and Counts Eleven through Fifteen), the

14  Superseding Indictment did not allege that Ganesh "misrepresented Dr. DeWees as the rendering

15  physician" or that Ganesh "used the wrong CPT codes"; (2) the government nonetheless asserted

16  those theories of falsity against Ganesh at trial; and therefore (3) there was "an undue risk that one

17  or more jurors voted to convict" Ganesh based on a theory of falsity that was never alleged against

18  her in the Superseding Indictment, and a specific unanimity instruction was thus necessary to

19  mitigate such a risk.  *Id.*

20          This argument fails for the same reasons that Ganesh's constructive amendment argument

21  fails.  Paragraph 24 of the Superseding Indictment plainly alleges that Ganesh (1) "included false

22  and inaccurate CPT codes" in claims for reimbursement that she submitted to health insurers,

23  "which artificially inflated both the seriousness of the patient's condition as well as the time which

24  the physician spent examining the patient"; and (2) "represented that the patient beneficiaries were

25  seen by another physician provider (not herself) no longer affiliated with [Ganesh] and her

26  practice at CMG."  ECF No. 52 ¶ 24.  Further, both the "Counts Two Through Ten" section and

27                                                      22

28  Case No. 16-CR-00211-LHK
    ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
    TRIAL

the "Counts Eleven Through Seventeen" section of the Superseding Indictment incorporate by reference paragraph 24. *See id.* ¶ 34 (first paragraph of the "Counts Two Through Ten" section, stating that "Paragraphs 1 through 31 are re-alleged and incorporated as if fully set forth here"); *id.* ¶ 36 (first paragraph of "Counts Eleven Through Seventeen" section, stating that "Paragraphs 1 through 35 are re-alleged and incorporated as if fully set forth here"). Therefore, contrary to Ganesh's view, both of the theories of falsity asserted against Ganesh at trial that Ganesh appears to identify as "impermissible"—i.e., that Ganesh "misrepresented Dr. DeWees as the rendering physician" and that Ganesh "used the wrong CPT codes"—were also alleged against Ganesh in the Superseding Indictment. Mot. at 23. As a result, there was no "undue risk that one of more jurors voted to convict" Ganesh based on a theory of falsity not alleged in the Superseding Indictment, and thus no specific unanimity instruction was needed. *Id.*

As a result, the Court concludes that Ganesh is not entitled to a new trial on any of her counts of conviction based on the Court's failure to *sua sponte* give a specific unanimity instruction that was not requested by either party before or during trial. Accordingly, the Court DENIES Ganesh's motion for a new trial.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Ganesh's Motion for Judgment of Acquittal and/or New Trial.

**IT IS SO ORDERED.**

Dated: June 8, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT GANESH'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL