Wm. Michael Whelan, Jr., Esq.. [CA Bar No. 112190]
95 S. Market Street, Suite 300
San Jose, California  95113
(650) 319-5554 telephone
(415) 522-1506 facsimile
whelanlaw@gmail.com

Attorneys for Defendant
VILASNI GANESH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. VILASNI GANESH, Defendant. | Case No. CR-16-211-LHK<br><br>**DR. GANESH'S SENTENCING MEMORANDUM and REQUEST FOR VARIANCE FROM THE GUIDELINE RANGE**<br><br>Date:  July 25, 2018, 9:15 a.m. |
|---|---|

COMES NOW the defendant Vilasni Ganesh, by and through her court- appointed counsel Wm. Michael Whelan, Jr. and submits this sentencing memorandum for the Court's consideration.

### Unresolved Objections in the PSR

U.S. Probation Officer Kyle Pollack has made the correction requested with respect to paragraph 5 (Dr. Ganesh's compliance with federal pre-trial supervision since her arrest).  Mr. Pollack also agrees with the defense objection to application of the four-level

increase for purported leadership or aggravating role in the offense. The following issues remain unresolved.

1. ***The Applicable Standard of Proof***

The PSR Addendum at paragraph 6 cites USSG §6A1.3 for application of a lower, preponderance of the evidence, standard of proof at sentencing, and requests the court to consider acquitted conduct. However, in the case at bar, the base offense level is 6, with a guideline range of 0-6 month in custody. But the PSR recommends upward adjustments to offense level 26, which would *more than quadruple* the defendant's potential exposure (+14 for amount of loss, +2 for 10 or more victims, +2 for abuse of position of trust, and +2 for obstruction of justice). When adjustments cause such a dramatic increase in the defendant's exposure the higher clear and convincing evidence standard applies to those aggravating facts. See *United States v. Staten,* 466 F.3d 708, 717-718 (9th Cir. 2006) (applying the clear and convincing standard when an enhancement "increased [the defendant's] offense level by **more than four levels** and more than doubled her sentence"); *United States v. Jordan*, 256 F.3d 922, 934 (9th Cir. 2001) (plain error for district court not to apply "clear and convincing standard based on the aggregated effect of two adjustments that resulted in a total of nine-level increase in the offense level); *United States v. Zolp*, 479 F.3d 715, 719-720 (9th Cir. 2007) (applying "clear and convincing" standard when government sought upward adjustment of 20 levels based on a loss amount between $7 million and $20 million) (emphasis added); and *United States v. Bakhit*, 218 F. Supp. 2d 1232, 1235-36 (C.D. Cal. 2002) (explaining that it was the government's burden to prove the loss attributable to the defendant's fraud by clear and convincing

evidence when the proposed loss calculation would have resulted in a fourteen-level enhancement).

2.  ***The Amounts of Loss and Restitution Claimed Are Unreliable***

*Regarding paragraphs 8 – 57*, the defense objects to the accuracy of the information contained therein as largely derived from investigative reports and evidence presented at trial. We recognize that Dr. Ganesh stands convicted of 10 counts, but we continue to contest those verdicts and note that she was acquitted of the conspiracy charge and all of the money laundering charges. To the extent that these paragraphs contain information relating to the charges of which Dr. Ganesh was acquitted, that information is not a permitted basis for increasing Dr. Ganesh's punishment and should be deleted. See *United States v. Watts*, 519 U.S. 148, 157 (1997) (*per curiam*).

More specifically, with respect to the loss and restitution calculations in paragraphs 43, 44, 46, 72, and 127 the defense continues have several objections.

First, the defendant objects to and contests as unreliable the amount of loss and restitution figures claimed by the government in the PSR and on behalf of the victim health insurance companies. The government's figures are based on "source spreadsheets" that were admitted at trial over objection as business records. Representatives of these insurers testified at trial that the source spreadsheets *all derived from data created and maintained by each insurer*; this is precisely the information subpoenaed by the defense sought for defense expert review, and denied by the court.

Federal law, pursuant to the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 and the Patient Protection

-3-

Dr. Ganesh's Sentencing Memorandum

and Affordable Care Act (ACA), mandates that insurers maintain electronic data information on all claims for a certain number of years for audit purposes. Defense expert forensic analysis of the insurers' electronic claims data is necessary in order to test the reliability of the government's loss and restitution claims prior to sentencing. The majority of hours would have been used to audit and perform computer software generated "cross-walk" comparisons of the alleged payments using the insurers own proprietary claim adjustment reasons codes and comparing them with the HIPAA standard transaction codes. The standard transaction information would also have allow the defense to properly assess and confirm the extent of any credit balancing, or offsetting of claims payments. This is critical in order to confirm exactly how much the defendant actually received and from what payee insurer in relation to the billed charges. The defendant's numerous subpoena applications, responses, and Court's orders are found at ECF 432, 448, 449, 450, 451, 452, 453, 454, and 455.

Undersigned counsel is informed and believes that the source spreadsheets contain unreliable information because: (a) the March 21, 2018 draft PSR contained loss amounts for insurer Noridian ($154,512.00) that then defense counsel Ted Cassman and AUSA Delahunty later decided were not, in fact, attributable to Dr. Ganesh, and (b) co-defendant Belcher's Sentencing Memorandum (ECF 384, pgs. 16-19, and Exhibits 11 and 12 attached thereto) outlines specific issues regarding the unreliability of the government's source spreadsheets. Therefore, defense expert review of the electronic data *that was relied upon by the insurers' experts* is necessary in order to scrutinize and challenge the reliability of the loss and restitution amounts claimed by the insurers' experts. Denial of

-4-

Dr. Ganesh's Sentencing Memorandum

the defense subpoena applications violates Due Process of law and the defendant's right to the effective assistance of counsel.

Second, the government's July 2, 2018 response to the draft PSR submitted a new and lower loss calculation of $688,698, rather than the $935,773 amount claimed initially and contained in the draft PSR.  The final PSR accepts without scrutiny these new lower amounts claimed.  It appears that the government no longer seeks loss or restitution in connection with 5 of the initial nine named "insurer victims", Noridian, Optum, BS/BC of Alabama, BS/BC of Minnesota, and United Health Care.  And of the remaining 4, Anthem, BSC, Aetna, and Cigna the amounts claimed are lower than initially claimed. The government has given no explanation for the number of victims and amounts of loss and restitution continuing to go down over time.

Third, the government has not clarified to what extent the claimed losses are based on "up-coding" – i.e. submission of a claim with a CPT code that corresponds to a higher fee than the service actually performed – a calculation of the loss would require subtraction of the cost of the service performed from the cost actually paid.

Fourth, we submit that even under the light most favorable to the government, the trial evidence failed to establish any scheme to defraud until at least May 2011, when Dr. Ganesh opened a new Bank of America account for KRD.  Consequently, we believe that that losses now claimed up to that time on the government's Attachment 9 (and incorporated into the PSR) should be excluded from loss; that is $136, 246[1] for claims from 2010 should be excluded, plus $26,595, for a total exclusion of $162,841.00 for claims up through May 2011.  This would reduce the amount of loss to $525,858, under

-5-

Dr. Ganesh's Sentencing Memorandum

the $550,000 threshold for applying the +14 offense level. Consequently, upward adjustment offense level should be +12, not 14. pursuant to USSG § 2B1.1(b)(1).

*Regarding paragraph 116*, we object to the proposed guideline sentencing range in light of the uncertainties and unreliability of the government's loss figures that the Court has not permitted the defense to properly challenge via expert review of the electronic data underlying the government's loss proof. Defense expert review, by a health care billing expert, is currently underway of the source spreadsheets only. Additional funding for the defense expert was provisionally approved by the CJA Unit on July 2, 2018, leaving insufficient time to complete the defense expert review in a timely fashion. Exhibits A and B display Mr. Flores work to date. His analysis of self-funded versus fully funded claims included in the government's loss claims will not be completed until tomorrow. This analysis is expected to lower the actual loss amount further.

3.  ***Obstruction of Justice Does Not Apply***

*Regarding paragraphs 64, 65, 66, 67 and 75*, we submit that there should not be upward adjustment for obstruction of justice. Dr. Ganesh testified honestly to the best of her mentally compromised and confused ability. §3C1.1, Appl. Note 2 makes clear:

> "The provision is not intended to punish a defendant for the exercise of a constitutional right… In applying this provision in respect to alleged false testimony or statement by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."

Dr. Ganesh genuinely believed, in her deluded state, that her billing practices were justified and appropriate. Her testimony was consistent with that delusional belief.

---

[1] See Exh. B: Flores' Spreadsheet

WM. MICHAEL WHELAN, JR.
ATTORNEY AT LAW
95 S. MARKET STREET, SUITE 300
SAN JOSE, CALIFORNIA 95113
(650) 319-5554

The jury's verdict rejected her defense. We respectfully request that the Court let Dr. Ganesh's offenses of conviction and the amount of loss enhancement to guide the Court's imprisonment decision.

The government's response to the draft PSR, and now the final PSR, asserts two additional grounds for application of this upward adjustment: (a) false presentation of insanity defense, and (b) alleged intimidation of witnesses through emails and lawsuits.

Although the Court did not agree with Dr. Levinson's testimony (at ECF 127) supporting a finding of incompetency, the fact that Dr. Ganesh is mentally compromised, *to some significant degree,* is **obvious and** essentially **uncontroverted**. Dr. Ganesh's decision-making ability has been compromised for many years by both Bipolar Disorder and Cognitive Impairment. The record is replete with competent evidence to that effect. Therefore, her presentation of an insanity defense was *not* in bad faith.

Regarding her 9/21/17 email to approximately 30 recipients, Magistrate Judge Cousins on 9/27/17 found these emails to *not be a knowing attempt to influence* known victims or witnesses.

Lastly, the merits of Dr. Ganesh's lawsuits against three victim insurers remains to be adjudicated.

4.  ***Abuse of Position of Trust***

*Regarding paragraph 74*, the PSR and government seek a +2 upward adjustment, pursuant to §3B1.3, for abuse of a position of trust. There was no evidence that Dr. Ganesh occupied a position that "contributed in some significant way to facilitating the commission or concealment of the offense…" USSG §3B1.3, Appl. N. 1. There was

-7-

Dr. Ganesh's Sentencing Memorandum

nothing unique or special about Dr. Ganesh's relationship with the insurance companies in this case. See *United States v. Thornton*, 511 F.3d 1221, 127 (9th Cir. 2008). Certainly the nature of her relationship with the insurers was not analogous to an attorney embezzling from a client trust account or a bank executive conducting a fraudulent loan scheme. *Id*. To the contrary, to find an abuse of trust on the facts of this case would require that the adjustment be assessed in every case of medical insurance fraud. Accordingly, these adjustments should not be imposed.

5.  ***Victim Related Adjustment***

*Regarding paragraph 73,* the government requested and the PSR agreed to a +2 upward adjustment for 10 or more victims, pursuant to 2B1.1(b)(2)(A). At present, there are now four insurer victims and one patient claiming loss and restitution, and an additional patient claiming fraudulent billing for visits he never had. Therefore, at present, there are 6 named victims.

The draft PSR did *not* claim a victim-related adjustment. And the government has never, until their response to the draft PSR, previously claimed any patients as victims. Now they claim, as does the final PSR, that Dr. Ganesh "submitted hundreds of false claims by using the 'means of identification' of dozens of actual individual patients, unlawfully and without authority… in furtherance of her fraud."

Neither the government nor US Probation have supplied the names and documentation of the "actual dozens … of names". If the government has and produces clear and convincing evidence actual instances where Dr. Ganesh did not render medical services to a patient and then used that patient's name to bill, *that would be* use of a

-8-

Dr. Ganesh's Sentencing Memorandum

"mean of identification" to further the fraud. But not this *overbroad claim* now, that Dr. Ganesh essentially committed identify theft or identity fraud while billing.

The authority cited by the government is a stretch and does not apply to Dr. Ganesh. *Masters,* unlike Ganesh, was an identity fraud case where defendant gained credit access without authorization from specific named individual victims where some of the individuals did not suffer actual loss. *Barson* involved a health care fraud conspiracy (unlike Ganesh) where some victims were paid to visit the defendants' clinic for procedures that were either not performed or not necessary, and in some cases were performed by a lay person holding themselves out as a licensed physician's assistant. The "means of identification" does not apply here. §2B1.1, Appl. N. 1 references that the controlling definition is at 18 U.S.C. §1028(d)(7).

18 U.S.C §1028 governs "fraud and related activity in connection with identification documents, authentication features, and information". It is the federal identity fraud criminal statute. Subsection (d)(7) states:

"…'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—
(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
(C) unique electronic identification number, address, or routing code; or
(D) telecommunication identifying information or access device (as defined in section 1029(e)

Therefore, the government has not proven "hundreds" of instances of Dr. Ganesh committing identity fraud.

The amount of loss and restitution now claimed by the government names *four*

-9-

Dr. Ganesh's Sentencing Memorandum

specific insurer victims and *no other insurer victims, and no patient victims*. At paragraph 61 and 61, the final PSR added two patient victims, (1) Chris Seitz, who only recently alleged that Cigna charged him $505.20 for two office visits in June 2012 when he claims not to have seen Dr. Ganesh for treatment, and (2) patient John Galarneau, who also only recently alleged that his health saving account was drained by Dr. Ganesh for care rendered "almost every other day, for an eight month period". However, Probation has not produced copies of these letters to the defense. This would make 4 victim insurers and 2 patients claiming to be victims.

Then "Victim Impact Statements" attached to the government's reply to the draft PSR comprise statements from 6 additional patients: two of the six patients do not claim any loss or impropriety on Dr. Ganesh's part; one of the six patients worked out his billing problems with the billing department and he was happy with Dr. Ganesh's care; another patient complained of poor quality of care but not billing problems; another patient complained of double billing; and the last patient claimed receiving and being billed for an unnecessary EKG and nose swabbing.[2] The patient who was double-billed would fit as a victim. That would bring the total to 7 victims (four insurers and four patients). USSG §2B1.1(b)(2)(A) implicitly recognizes that that (b)(1) takes care of 9 or less victims.

We respectfully request that the Court not apply the victim related adjustment.

*Defense Guideline Calculation Request*

Without waiving any issue raised and preserved at trial and through the post-trial motions for new trial and for acquittal, the defense requests that the Court, at worst , apply

---

[2] Three of these patients would not qualify as victims given their lack of problems with billing or care.

-10-

Dr. Ganesh's Sentencing Memorandum

the following guideline calculations:

Pending further possible expert basis for requesting a lower amount of loss, defense request that the Court apply the +6 point base offense level, +12 at most, not 14, for amount of loss, and, as summarized below, not apply the victim related, position of trust, and obstruction of justice enhancements requested. Dr. Ganesh's offense level would then be 18, with a guideline range of 27-33 months. From that, we make a non-specific request for the Court to vary down farther than requested by US Probation.

6. *3553(a) Factors and Downward Variance Request*

Regarding nature and circumstances of the offense and history and characteristics of the defendant, the defense agrees with PSR's description of multiple mitigating facts and circumstances of Dr. Ganesh's life worthy of the Court's significant consideration. USPO Mr. Pollack recommends a variance to 46 months, which is commendable, but still, in the defense view far more severe a punishment than necessary to achieve the goals of sentencing. The reality is that if Dr. Ganesh continues to with her current mental health treatment plan, which includes medication, she will never re-offend. And the loss of her medical license, is a devastating punishment that will endure much longer than any prison term. Please consider this.

Mr. Pollack appropriately included much of the mitigating information presented to him for consideration by Dr. Ganesh's last attorney, Ted Cassman. However, Mr. Cassman, not undersigned counsel, gathered this information from his careful social history investigation. Please see attached Exhibit C: Ted Cassman Letter to USPO Mr. Pollack. Mr. Cassman speaks compelling for our mutual doctor client who will now be

torn from her children.  Please read and consider his letter, as Mr. Pollack did.

As in all cases post *Booker*, in choosing the particular sentence that complies with the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing," [*Kimbrough v. United States*, 128 S. Ct. 558 at 570 (2007)], the judge "shall consider", among other provisions, the "nature and circumstances of the offense" pursuant to 18 U.S.C § 3553(a)(1), "seriousness of the offense" pursuant to 18 U.S.C § 3553(a)(2)(A), and "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct" pursuant to § 3553(a)(6).

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and history and characteristics of the defendant.'"  *Gall v. United States*,128 S. Ct. 586 at 596 n.6 (2007).

Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence imposed… to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The seriousness of the offense traditionally is weighed by the degree of injury sustained by victims, the defendant's motives, role in the offense, and the existence, if any, of mental illness or cognitive impairment.  Of note, Congress believed that prison should generally be inappropriate in "cases in which the defendant is a first offender, who has not been convicted of a crime of violence or an otherwise serious crime." 28 U.S.C. § 994(j).  Further, the offense may be considered less serious if the defendant's motives were not at all or not entirely reprehensible, and if defendant's gain from the offense was comparatively minor.

### *Conclusion*

It is clear and convincing the Dr. Ganesh suffered from significant mental health issues and delusions that drove the offense conduct.  This mitigates the seriousness of the offenses, as well.  The two declarations or affidavits that Dr. Ganesh has filed against the advice of counsel also make clear that she is still somewhat delusional and very much needs ongoing treatment.  Federal prison is certain to deepen the mental health issues that challenge Dr. Ganesh.  Please consider this when pronouncing Judgment.

Respectfully submitted,

_____
WM. MICHAEL WHELAN, JR.
Attorney for Defendant Vilasni Ganesh