# ARGUEDAS, CASSMAN & HEADLEY, LLP

Law Offices

803 Hearst Avenue, Berkeley, California 94710
Phone: (510) 845-3000   Fax: (510) 845-3003
www.achlaw.com

Cristina C. Arguedas
Ted W. Cassman
Laurel L. Headley
Julie A. Salamon
Raphael M. Goldman

Of Counsel:
Christy H. Chandler

March 15, 2018

Kyle Pollak
U.S. Probation Officer
Northern District of California
280 South First Street, Suite 106
San Jose, CA 95113

RE:  United States v. Vilasini Ganesh,
     No. 16-CR-211 LHK

Dear Kyle:

I write to you to give you some additional background and context relating to Dr. Vilasni Ganesh in anticipation of the draft PSR in the above-referenced matter.

As you know, Vilasni was born and grew up in Madras (now called Chennai), India. Both of her parents were worked. Her mother was a hospital Nurse. Her father was a senior Police Officer and was a man of great integrity in a society where corruption was rampant. Growing up as a child, Vilasni was very timid and protected. She was rarely allowed to leave the home except to attend school, and when she did go out she was always escorted by someone. She was especially close to her father: they routinely went jogging together; he helped her with her studies, and he aspired for Vilasni to become a doctor. He meant everything to her.

In 1988, Vilasni's father died tragically in a car accident while on duty when Vilasni was 17 years old. This was a terrible blow from which Vilasni has never recovered. As you observed, to this day Vilasni cannot speak about the loss of her father without visible emotion. Not long after his death, Vilasni entered medical school, fulfilling her father's dream. Vilasni was and is absolutely passionate about the practice of medicine.

A couple years after Vilasni's father died, her mother decided to pick up pieces and move to the U.S. Vilasni followed in 1993, after graduating from medical school. Her bother also immigrated. She married Raja Malyala, M.D. in 1994, in a traditional arrangement. From 1993 to 1999, Vilasni lived in Toledo, Ohio and worked as a research assistant in cancer research, while also studying to pass the American Board exams so she could practice medicine in the U.S. After passing her Boards in 2002, Vilasni did her residency at Rush University Hospital in Chicago.

Vilasni and Raja had two children together, Ram who is now 19 and Prashant who is now 17. Vilasni and Raja moved to Fremont, California in 2003. Raja, who was also a

physician, preferred to be close to his family in the Chicago area, so he took a job back there. He and Vilasni lived separately for a couple of years, grew apart and eventually divorced in 2005.

For approximately a year, Vilasni worked as a roving, temporary doctor for an agency. In 2004, she joined the practice of Kuhlman, Riley and Dewees, M.D., primarily under the supervision Edward C. Dewees, M.D. In 2004, Vilasni also met Greg Belcher. They fell in love and moved in together in 2005. Their first child, Raymond, was born in 2007, followed by Rea in 2008. Sadly, this proved to be turning point. Vilasni suffered from severe postpartum depression after Rea's birth that exacerbated other mental and emotional issues (discussed below) that she had adequately managed throughout her life till then. There were a second postpartum episode with the birth of David (2009). Vilasni and Greg are loving, devoted parents. Greg, in fact, is like a second father to Vilasni's older children. The children are thriving.

In 2006, Vilasni purchased Dr. Dewees' practice and their roles were essentially reversed – the older doctor was now an employee of his younger protégé. Vilasni has little if any business sense. By all accounts, she was essentially incompetent as a manager and administrator. She soldiered through the first two years of the practice, still with Dr. Dewees' guidance; but by 2010, Vilasni had lost all semblance of control at her office: she was always running hours late, she was constantly moving from crisis to crisis while berating staff loudly and often unprofessionally, her conduct and speech were often inappropriate and, most relevant here, her billing system was a disaster.

There can be no doubt that Vilasni's legal issues and her apparent inability to conform her conduct to the demands of her profession stemmed in part from her deep seated mental, cognitive and emotional impairments. Her treating psychiatrist, Dr. Douglas Levinson, has diagnosed her with bipolar disorder, panic disorder and depression with unspecified cognitive impairments. (Dr. Glezer, the government's expert who testified at trial, conceded the diagnosis of panic disorder and noted evidence of cognitive impairment, but opined that she could not confirm a bi-polar disorder diagnosis.) She is being treated with Lithium. Quite simply, her judgment is severely impaired. Her brother and mother confirm that Vilasni has struggled with these issues her entire life, and that they became strikingly more pronounced after her episodes of post partem began in 2008. This decline coincided with the onset of the conduct that brings her before the court.

In retrospect, given her lifelong cognitive issues, the very fact that Vilasni completed medical school and passed her Boards is a remarkable accomplishment. Those achievements speak to her father's inspiration, her great passion for medicine, her indomitable spirit and her commitment to hard work. But it is also clear that her impairments have become more pronounced and disabling over the years since the birth of her third child. These observations are borne out and fully supported by the reports of her family members (as documented in the trial transcripts) and by the evaluations of Dr. Howard Friedman, a neuropsychologist who evaluated Vilasni in July 2017, and of Dr. Levinson, her treating psychiatrist.

The loss of her medical license will be a profound sanction for Vilasni. A separation from her family would be even more devastating. Even more than the practice of medicine, Vilasni's children are her greatest passion. They are the love of her life. Obviously, ages 7 ½ to 19, the children need their mother.

I enclose copies of several of Dr. Friedman's initial report and a short supplement. (Exhibit A.) I am in the process of obtaining Dr. Levinson's report(s) and will forward to you as soon I have them. Both doctors testified at trial. Let me know if you would like me to forward copies of the transcripts.

I look forward to speaking with you in the very near future. Thank you for your attention to these matters.

Very truly yours,

Ted W. Cassman

cc:   AUSA Patrick Delahunty