ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
PATRICK R. DELAHUNTY (CABN 257439)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5045
   FAX: (408) 535-5066
   Email: Jeff.nedrow@usdoj.gov
   Email: Patrick.delahunty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 16-CR-00211 LHK |
| Plaintiff, | UNITED STATES' RESPONSE TO GANESH'S SENTENCING MEMORANDUM |
| v. | Date: July 25, 2018 |
| VILASINI GANESH, | Time: 9:15 a.m. |
| Defendant. | The Hon. Lucy H. Koh |

The United States of America, by and through its attorneys of record, herein responds to the sentencing memorandum submitted by defendant Vilasini Ganesh (ECF No. 473), as requested by the Court in an email to the parties.

**I.     The Applicable Standard of Proof**

Ganesh appears to argue that each and every enhancement must be proven by clear and convincing evidence.  ECF No. 473 at p. 2.

Typically, sentencing courts must make factual determinations by a preponderance of the evidence. *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005).  However, the government has acknowledged where application of a Guidelines enhancement results in an extremely disproportionate

sentence, the government "may" have to prove the enhancement by clear and convincing evidence. *United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010). To determine whether a particular sentencing factor has a disproportionate impact on a defendant's sentence, the Ninth Circuit considers what are sometimes called the *Valensia* factors,[1] none of which is dispositive:

> (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*United States v. Hymas*, 780 F.3d 1285, 1290 (9th Cir. 2015) (quoting *Treadwell*, 593 F.3d at 1000).

With the exception of the requested loss calculation finding, none of the government's proposed guideline enhancements standing alone create a "disproportionate impact" on the offense level in this case based on these factors. In particular, as to the fifth factor, no other sentencing enhancement requested by the government carries an increase of more than two levels (unless the Court imposes four levels for Ganesh's role rather than two). Accordingly, the Court need only use a "clear and convincing" evidence standard in analyzing the government's factual showing as to loss. Indeed, the government previously accepted this standard regarding loss in its sentencing memorandum. ECF 472 at p. 472 ("the government has no objection to the Court applying the clear and convincing standard" to determine the loss amount). The government submits that all other factual determinations may be reviewed under the ordinary preponderance standard.

## II.   The Loss Amount

Ganesh has a variety of challenges to the loss amount. Each is addressed in turn.

### A.   Purported Lack of Clarity and Purported "Changing" Loss Amounts

Despite Ganesh's representations in her sentencing memorandum, the government's loss position

---

[1] These factors were first articulated in *United States v. Valensia*, 222 F.3d 1173 (9th Cir. 2000), which was vacated and remanded by *United States v. Valensia*, 532 U.S. 901 (2001).

has not wavered since March 29, 2018.  The position was articulated in the government's sentencing memorandum regarding Dr. Gregory Belcher, specifically, in two spreadsheets that documented the loss associated with *Ganesh's* patients.  *See* ECF No. 369-9 and -10 (attachments), *see also* ECF No. 369 at p. 11 (discussing attachments).  In every single communication with Ganesh's current counsel, the government has reiterated this argument and what it is based upon.  The government also did so in its sentencing memorandum regarding Ganesh.  The government does not understand Ganesh's persistent assertions that the government's theory of loss is unclear.

### B. Acquitted Conduct

As to Ganesh's argument regarding acquitted conduct, acquitted conduct can and should be included in establishing the loss amount.  *United States v. Watts*, 519 U.S. 148, 154 (1997) (a sentencing court may consider conduct of which a defendant has been acquitted).  In asserting acquitted conduct should be ignored, Ganesh cites, without explaining, *Watts*.  ECF No. 473 at p. 3.  *Watts* does not help Ganesh.

### C. The Accuracy of the Source Spreadsheets

This issue has been repeatedly, and exhaustively, argued by the parties and resolved in an unwavering manner by the Court.  Yet, Ganesh once again attempts to impugn the Source Spreadsheets. She argues that her retained expert, Flores, and prior counsel, Cassman, have established the unreliability of Source Spreadsheets.  It is the same argument that Ganesh put forward in her first and second application for a Rule 17(c) subpoena.  The government responded with a thorough and complete rebuke of these arguments, explaining the inaccuracy of Ganesh's representation of the record and strained logic.  *See* ECF No. 454 (nine-page opposition to subpoena request), *see also* ECF Nos. 449 and 451 (government position regarding Ganesh's subpoenas).   In sum, as explained in the government's filing, Flores' statements regarding the spreadsheets do little more than actually confirm—rather undermine—the reliability of the Source Spreadsheets.  *See* ECF No. 454.  The government incorporates its prior arguments in its filing (ECF No. 454) and reasserts them once again regarding this issue.

### D. Upcoding

The government has repeatedly explained this issue to the defendant and does not understand Ganesh's purported confusion regarding it.  In short, as discussed above, the government's loss amount

is based upon claims in which Dr. DeWees was identified as the treating physician. These claims amount to approximately $688,000 in money paid to Ganesh. Those claims are false for other reasons as well, including upcoding, identifying the wrong date of service, and the incorrect TIN number. But at a minimum, they are all false because they identify Dr. DeWees as the treating physician.

With regard to the number of potential upcoding claims submitted by Ganesh, the government provided a table to Ganesh's attorney that identified approximately $2.8M in paid claims in which Ganesh billed the two highest CPT codes, 99215 and 99245. This was provided in an email on May 11, 2018. *See* Attachment 1 (email). Additionally, when the parties met and conferred, this table was discussed and reviewed by the parties. In sum, if the government were relying merely upon upcoding to establish a loss amount, the loss amount could be as high as $2.8M. The government has taken a more narrow approach, however, and based its position on other falsities also being present in the claims, specifically, the identification of Dr. DeWees as the treating physician.

### E. When the Scheme Began

For the reasons articulated in its sentencing brief, and also based upon the evidence received by the jury at trial, the government submits that the scheme to defraud began when Ganesh purchased her practice from Dr. DeWees in approximately 2006. The loss derived from that scheme includes, at a minimum, each and every claim submitted from 2010 and on that identified Dr. DeWees falsely as the treating physician.

## III. Obstruction

Ganesh provided false testimony. Although false, it was cogent and easy to understand. The jury did not credit the testimony, but there was no indication that Ganesh was not willfully presenting it. Indeed, Dr. Levinson, who is Dr. Ganesh's treating physician, testified at trial that by August 2017 (several months before Ganesh testified), his treatment of Ganesh had been successful and that she was no longer suffering depression and that her bipolar disorder was being effectively treated by minimal dosages of the appropriate medications. As to the purported cognitive impairment of Ganesh, the government has previously argued both to the Court (in the competency hearing) and to the jury (at trial) regarding Dr. Levinson's findings, the fact that Ganesh is malingering, and her ability to manipulate legal proceedings to her advantage. The previous findings of the Court and jury support the application

of the enhancement.

### IV. Abuse of Position of Trust

The government has nothing new to add to this discussion that has not been previously argued.

### V. Victim Count Adjustment

Ganesh asserts the government has not identified the patients whose identities were used in the scheme. Contrary to Ganesh's assertions, the names of each patient were identified to the Court and probation. *See* ECF No. 472-8 and 472-6 (government sentencing memorandum exhibits). They are the patients for whom a false claim was submitted that identified Dr. DeWees as the providing physician. Each claim included the personal identifying information of the patients, including social security numbers and addresses. *Id.* These were identified in Court filings on March 29, 2018 (for the Belcher sentencing), to the probation officer regarding the final PSR, and to the defendant in the Government's sentencing memorandum. The application notes, and the case law, establish that the use of a person's identity to further a scheme to defraud supports a finding that each such person is a victim for persons of § 2B1.1, regardless of whether such individuals suffered a pecuniary loss.

Additionally, to the extent that Ganesh continues to argue that purported self-funded plans are separate victims from the insurers (that is, insurers cannot be awarded restitution for a claim paid out on a self-funded plan because the self-funded plan suffered the loss), then this argument by Ganesh would amount to a concession by Ganesh that there are dozens of additional insurer victims and certainly at least 10.

The enhancement should be applied.

DATED: July 24, 2018

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

/s/
JEFFREY NEDROW
PATRICK R. DELAHUNTY
Assistant United States Attorneys