ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
PATRICK R. DELAHUNTY (CABN 257439)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5045
   FAX: (408) 535-5066
   Email: Jeff.nedrow@usdoj.gov
   Email: Patrick.delahunty@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 16-CR-00211 LHK |
| Plaintiff, | UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM |
| v. | Date: August 25, 2018<br>Time: 10:30 a.m.<br>The Hon. Lucy H. Koh |
| VILASINI GANESH, | |
| Defendant. | |

The United States of America, by and through its attorneys of record, herein submits its

supplemental sentencing memorandum pursuant to the Court's request.

    I.    The question of self-funded vs. fully-funded claims has no bearing on either the loss or restitution calculations in this case.

    Ganesh challenges the government's loss and restitution calculations on the basis that

the government's figures fail to take into account the question of whether some of the payments made

by victim insurers as a result of Ganesh's false claims were related to "self-funded" patient health care

plans, as opposed to "fully funded" patient health care plans.  In general terms, "fully funded" or fully

insured plans are ones in which an employer contracts an insurance company to provide coverage to the

employees and the employees pay premiums for such coverage; in self-funded plans, the employer

assumes all or some of the direct risk for payment of the claims for benefits by self-funding the

insurance and contracting with the insurer to administer and adjudicate claims.  The nature and scope of

such arrangements may vary, but the government understands this to be the basic difference between the

types of plans.

The distinction has zero application to the question of loss in this case.  The government's proof

at trial, and the exhibits submitted in support of its original sentencing memorandum, amply support a

loss figure of $688,698 by clear and convincing evidence as an appropriate, if conservative, calculation

of loss linked directly to Ganesh's submission of tens of thousands of claims for payment to health

insurance companies which identified Dr. DeWees as the rendering physician.  There is no dispute that

the victim insurers paid Ganesh hundreds of thousands of dollars based on those false claims.

This number is conservative and reflects considerable leniency.  *United States v. Onwuzulike*,

488 F. App'x 208, 210 (9th Cir. 2012) ("The court need not make its loss calculation with absolute

precision; rather, it need only make a reasonable estimate of the loss based on the available

information.").  To be clear, the trial evidence proved that the loss in this case could be in the millions,

as Ganesh's fabrications extended beyond her false identification of DeWees as the rendering physician

to include false statements regarding dates, length of service, and nature of service; however,

recognizing the challenges in obtaining a precise loss measurement as to some of these theories, the

government has chosen to focus its loss calculation on the false statements which identified Dr. DeWees

as the rendering physician during years when he was no longer at the Campbell Medical Group, as this

measure of loss cannot seriously be disputed.  Furthermore, to the extent the Court has concerns about

coming up with a precise loss calculation because of some of the issues raised by the defense, an

approached based strictly upon the money paid out by the victim insurers in response to claims

submitted by Ganesh, and listing DeWees as the rendering physician, provides a concrete way to

SENTENCING MEMORANDUM RE GANESH
 CASE NO. 16-CR-211 LHK                         2

measure loss which is acceptable under the guidelines where there are difficulties in ascertaining a loss amount. *See*, U.S.S.G. 2B.1.1, cmt. N. 3(B), stating that a Court may "use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined."

The $688,698 loss figure proposed by the government is directly linked to payments made to Ganesh in connection with claims in which she falsely identified DeWees as the rendering provider. Whether or not a third party, i.e. a patient employer, is indemnifying or financially responsible for a portion of the claim, as seen in a "self-funded" health care plan, is completely irrelevant to the loss question; the question is how much Ganesh obtained for false claims.  If any of these claims were self-funded, it is theoretically possible her conduct might have caused more than one entity to contribute, or play some role in, a payment based on a particular false claim; but that question has no bearing on either the falsity of Ganesh's request or the amount of money obtained by Ganesh as a result of her false statements.  Either way, her fraudulent criminal conduct is resulting in a gain to her of $688,698, because payments in the amount of $688,698 are being made to her based upon her false claims.

As to restitution, it is the government's understanding that the $688,698 sum represents monies paid directly to Ganesh from the victim insurers.  The government submits that the evidence in the record supports a finding that this amount is owed by a preponderance standard.  The government does not have access to the victim companies' internal data regarding self-funded and fully funded plans; what the government has in its possession is information conclusively demonstrating that these victim insurers paid out $688,698 to Ganesh based on her false statements.  The defense wants the Court to speculate that it is possible that as to some of these claims, a third-party employer might have contributed a portion of the payment.  The defense has failed, however, to provide any actual evidence in support of that theory.   The defense conjecture about self-funded claims is based on nothing more than an untested defense expert musing about the possibility of self-funded plans.  The facts before the Court demonstrate that Anthem paid Ganesh $671,771, Blue Shield/Blue Cross paid Ganesh $15,582, Aetna paid Ganesh $1,150, and Cigna paid Ganesh $196.  The evidence in the record is that these four

SENTENCING MEMORANDUM RE GANESH
 CASE NO. 16-CR-211 LHK                          3

victims paid out these sums to Ganesh based upon her false statements.  Accordingly, the government

respectfully submits that the Court's restitution order should include payments in these sums to these

four victim health insurers.

II.   The two-level upward adjustment pursuant to U.S.S.G. §  2B1.1(b)(2)(A) applies,
      because Ganesh used the personal identifying information of dozens of patients

As noted previously, the government further requests that the guideline calculation be modified

to include a two-level upward increase under U.S.S.G. Section 2B1.1(b)(2)(A), as this offense involved

10 or more victims.  This guideline section applies because Ganesh submitted hundreds of false claims

by using the "means of identification" of dozens of actual individual patients unlawfully and without

authority.  *See* ECF No. 472-8 (Ex. 8 in support of government's July 18, 2018 sentencing

memorandum, filed under seal).  Ganesh's use of the personal identifying information of her patients in

furtherance of her fraud, establishes that these individuals are victims for purposes of Section 2B1.1,

irrespective of whether they suffered any actual financial loss.  *See*, *2B1.1 Application Note 1* (definition

of "means of identification); *Application Note 4(E)* ("Cases Involving Means of Identification"); *United

States v. Masters,* 613 Fed.Appx. 618, 621-622 (9th Cir. 2015); *United States v. Barson*, 845 F.3d 159,

167 n.16 (5th Cir. 2016) (Medicare beneficiaries whose identifies were used to file false claims to

Medicare for were "individual[s] whose means of identification was used unlawfully or without

authority" and therefore "victims" under U.S.S.G §2B1.1 (b) (2), even though beneficiaries were paid to

visit fraudulent clinic and procedures were either not performed or unnecessary).

The Court has requested clarification as to which of these victims are to be considered for this

enhancement.  The answer is that all of the dozens of victims in Exhibit 8 are victims for purposes of

this enhancement, because their personal identifying information was used without their knowledge or

consent as a part of Ganesh's fraud.  There is no requirement that these individuals suffer any personal

loss; the mere fact of Ganesh using their information without their consent is sufficient to trigger

application of U.S.S.G. §  2B1.1(b)(2)(A).  Accordingly, the government respectfully requests that the

Court make the finding of the applicability of U.S.S.G. Section 2B1.1(b)(2)(A) based upon these victims listed in Exhibit 8 to the government's July 18, 2018 sentencing memorandum.

III.     The Loss Calculation is Based On Claims Where Ganesh Falsely Identified DeWees As The Rendering Provider During a Time Frame Where He Was Working Part-Time At At A Different Medical Practice, and Using a Different TIN

As noted in the PSR, Dr. DeWees left the Campbell Medical Group—the medical practice which he turned over to Ganesh-- no later than 2006.  *See*, PSR, ¶ 11 ("Sometime in 2006, after Dr. DeWees had left the practice, Ganesh relocated CMG to the same address, but in Suite 110, which was the location of Belcher's medical practice.")  Ganesh operated the Campbell Medical Group from 2006 forward without Dr. DeWees's involvement.  This was the CMG practice Ganesh pursued with co-defendant Belcher in the office space located at 18805 Cox Avenue, Suite 110, Saratoga, California.

After 2006, Dr. DeWees did not work for CMG, and after 2006, he no longer submitted any billings using the KRD TIN, xxxxx3757.  The reference in paragraph 14 of the PSR to Dr. DeWees's part-time work as a doctor in 2011-2014 does not refer to Dr. DeWees working at CMG; it refers to his work at a similarly named, but completely distinct entity, the Campbell Family Practice, located at 1600 West Campbell Avenue, Campbell, California.  The Campbell Family Practice has nothing to do with the Campbell Medical Group; it was, and is, a completely different medical practice, at a different location, with different personnel, and without any relationship to Ganesh or Belcher.  This move by Dr. DeWees constituted a clean break from the Campbell Medical Group.  In fact, Dr. DeWees used a completely different TIN, xxxxx0859, at the Campbell Family Practice, and a review of billing under the TIN actually used by Dr. DeWees starkly illustrates the distinction between the legitimate use of his TIN and the fraudulent manner in which Ganesh abused the KRD TIN at CMG.  As further noted in the PSR:

Dr. DeWees' [Campbell Family Practice] TIN only billed Anthem Blue Cross $11,719 from December 2011 through December 2013, and a review of Dr. DeWees' [Campbell Family Practice] TIN did not reveal any inappropriate billings. There were no consultation codes and the range of patients and diagnoses were appropriate for a general practitioner. The Anthem Blue Cross investigation revealed that Dr. DeWees' CMG TIN and his Campbell Family Practice TIN

were being used during the same dates, which indicated that Dr. DeWees purportedly saw patients in Campbell and Saratoga, on the same day.

PSR, ¶ 14.

The reason that both TINs associated with Dr. DeWees were being used on the same day between two separate practices was that Ganesh was fraudulently using Dewees's KRD TIN at CMG (xxxxx3757) at the same time DeWees was using his Campbell Family Practice TIN (xxxxx0859) legitimately at the Campbell Family Practice. It was during this period of time—while Dr. DeWees was semi-retired, working only two days a week, and working at an entirely different medical practice from CMG when he worked at all—that Ganesh was falsely using the KRD TIN and Dr. DeWees's name to bill hundreds of thousands of dollars to the victim insurers.

As a final note, the defendant argues that the government's loss calculation erroneously includes funds paid on claims that did not identify Dr. DeWees as the rendering physician, but were just generally attributed to "Kuhlman, Riley & DeWees." According to the defense, many of the claims reflected on the source spreadsheets upon which the government relies for its loss calculations include references to claims submitted with "Kuhlman, Riley & DeWees" as the "rendering physician" and/or with a billing zip code that is not associated with Dr. Ganesh. Notably, the defense has provided no factual basis in support of this claim beyond the unsubstantiated objection raised to the draft PSR.

The Court should reject this argument for two reasons. First, this claim is not factually correct. In fact, all of the submissions made in support of the $688,698 loss calculation identify Dr. DeWees as the rendering physician. ECF No. 472-8 (Ex. 8 in support of the government's July 18, 2018 sentencing memorandum, filed under seal). As all of the claims in support of the $688,698 list Dr. DeWees as the rendering physician, they should accordingly all be included in the loss calculation.

Second, this argument is a red herring. KRD had long ceased to exist as an entity in the 2010-2014 time frame. Either way, Ganesh had no basis to continue using the KRD TIN for her billing and to identify DeWees as the rendering provider. The only reason to do so was her knowledge, and

awareness, that her openly fraudulent conduct was going to lead the insurance companies to raise questions and cut off the flow of money coming to her as a result of her false claims.  Furthermore, if the government had included in the loss calculation all of the claims in which the KRD TIN was used, as opposed to merely relying upon the claims in which Dr. DeWees was identified as the rendering physician, the loss amount would be considerably higher.  The government will have this higher figure available to present to the Court at the sentencing hearing in this case.

In sum, the defense has not challenged, and cannot, credibly challenge, the $688,698 loss calculation, as it based upon claims that indisputably identify Dr. DeWees as the actual physician providing the health care during a time when he was no longer at CMG.  Dr. DeWees did not provide the treatment Ganesh said he did, as he had long left CMG and was working part-time at a different medical facility.  The government accordingly respectfully requests that the Court adopt the $688,698 loss calculation.

DATED: August 14, 2018                                   Respectfully submitted,

                                                        ALEX G. TSE
                                                        United States Attorney

                                                        /s/
                                                        _____
                                                        JEFFREY NEDROW
                                                        PATRICK R. DELAHUNTY
                                                        Assistant United States Attorneys