Per GL FRMP Rule 59(a)
Motion for relief from non-dispositive motion

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

VILASNI GANESH, et al.

Defendant.

No. CR 16-0211-LHK

**APPEAL FROM MAGISTRATE JUDGE'S ORDER DENYING SUBSTITUTION OF COUNSEL**

Pursuant to Federal Rule of Criminal Procedure 59(a), Defendant Vilasni Ganesh ("Dr. Ganesh")[1] notifies this Court and all parties to this action of this Appeal from the Magistrate Judge's Order Denying Dr. Ganesh's Motion to Substitute Counsel (ECF No. 508). In support thereof, Dr. Ganesh states as follows.

## BACKGROUND

On May 19, 2016, a grand jury indicted Dr. Ganesh on charges of conspiracy to commit health care fraud, health care fraud, false statements relating to health care matters, conspiracy to commit money laundering, and money laundering. *See generally* Indictment (ECF No. 1).

On May 24, 2016, Graham Archer, a public defender, appeared by appointment, for Dr. Ganesh, at her initial bond hearing. *See* Minute Entry (ECF No. 4). Shortly thereafter, Dr. Ganesh retained Daniel Horowitz to represent her in these proceedings. *See* Minute Entry (ECF No. 14).

On July 13, 2017, a grand jury issued a superseding indictment against Dr. Ganesh, again on charges of conspiracy to commit health care fraud, health care fraud, false statements relating to

---

[1] While some courts refuse to consider *pro se* filings from parties represented by counsel, courts understandably do consider such filings when unique to issues involving representation. *See, e.g., Vieira v. Chappell*, No. 1:05-cv-01492 AWI, 2012 WL 1911370, at *3 (E.D. Cal. May 25, 2012) (citing Local Rule 191(d)). At least one federal court has recently considered a *pro se* appeal in this exact procedural posture. *See United States v. Kuhnel*, Crim. No. 17-158 (JRT/BRT), 2018 2975998, at *1 (D. Minn. June 12, 2018) (considering *pro se* appeal of magistrate judge's order denying motion to substitute counsel).

- 1 -

health care matters, conspiracy to commit money laundering, and money laundering. *See generally* Superseding Indictment (ECF No. 52).

Between October and December, 2017, the Court held a 15-day jury trial on the charges in the superseding indictment. *See* Minute Entries (ECF Nos. 191-92, 196-97, 202-03, 213, 215, 225, 228, 232, 257, 276, 288, 296). Ultimately, the jury acquitted Dr. Ganesh on the single counts of conspiracy to commit health care fraud and conspiracy to commit money laundering, and multiple money laundering counts, but convicted her on five counts of health care fraud and five counts of false statements relating to health care matters. *See generally* Jury Verdict (ECF No. 300).

Five days after the verdict, on December 19, 2017, Mr. Horowitz moved to withdraw as attorney, noting that Dr. Ganesh had asked him to withdraw and that Dr. Ganesh had retained another attorney to represent her in the proceedings. *See* Mot. Withdraw at 2 (ECF No. 303); Decl. Supp. Mot. Withdraw. On January 9, 2018, the Court granted Mr. Horowitz's motion to withdraw. *See generally* Order Granting Mot. Withdraw (ECF No. 323). Ted Cassman then entered his appearance for Dr. Ganesh. Notice of Appearance at 1 (ECF No. 321).

On March 29, 2018, on the advice and with the assistance of separate counsel uninvolved in these proceedings, *see* Ex. 1 at ¶ 3 (Attached Declaration of Dr. Ganesh) ("Ex. 1"), Dr. Ganesh filed a declaration alleging that Mr. Horowitz had provided ineffective assistance in these proceedings. *See generally* First Decl. of Dr. Ganesh (ECF No. 388).

Three days later, on April 2, 2018, Mr. Cassman moved to withdraw as counsel, noting that the declaration had been filed without his consent and that her consultation with another attorney created an irreconcilable conflict of interest. *See generally* Mot. Withdraw (ECF No. 389). On April 3, 2018, over Dr. Ganesh's objection, *see* Ex. 1 at ¶ 4, the Court granted Mr. Cassman's motion to withdraw. *See* Minute Entry (ECF No. 397). On April 6, 2018, the Court appointed Wm Michael Whelan, Jr. to represent Dr. Ganesh. *See* Minute Entry (ECF No. 408).

On July 25, 2018, Dr. Ganesh was hospitalized for severe, panic-induced menstrual bleeding. *See* Ex. 1 at ¶ 10. As a result, she could not appear for sentencing. *See id.*; *see also* Minute Entry (ECF No. 492). The Court reset her sentencing for August 28, 2018. *See id.*

On August 9, 2018, Dr. Ganesh filed a notice seeking to substitute S.H. Michael Kim ("Mr. Kim"), Mark E. Schamel ("Mr. Schamel"), and Pascal F. Naples ("Mr. Naples"), of Womble Bond Dickinson (US) LLP, as counsel of record for Wm. Michael Whelan, Jr., Esq. ("Mr. Whelan"), with the consent of Mr. Whelan. *See generally* Notice Subst. Attorney (ECF No. 502); Mots. Appear *Pro Hac Vice* (ECF Nos. 503-04). On the following day, Friday, August 10, 2018, the Court set the substitution of counsel issue for a hearing on Monday, August 13, 2018. Clerk's Notice Setting Hr'g (ECF No. 507).

At the hearing, Mr. Naples argued in favor of substitution on Dr. Ganesh's behalf. *See* PDF with Attached Audio File at 22:00-26:00 (ECF No. 509). First, Mr. Naples argued, although the record indicated that this would be the fourth occasion in which Dr. Ganesh switched counsel, the details surrounding each switch actually demonstrated an ordinary course of events. *See id.* at 22:00-24:30. Initially, Dr. Ganesh was represented by a public defender until, shortly after the initial indictment, she retained private counsel, which is not at all unusual. *See id.* Then, after losing at trial, Dr. Ganesh replaced counsel, which (again) is not at all unusual. *See id.* Although Dr. Ganesh then switched from Mr. Cassman to Mr. Whelan, she could hardly be blamed for this substitution when she objected to it. *See id.* Finally, given that Mr. Whelan was appointed, it was only a matter of time before Dr. Ganesh found and retained counsel of her choice. *See id.* Second, Mr. Naples pointed out, given Dr. Ganesh's stress-induced medical condition, it was not surprising that she was unable to appear at sentencing, which was scheduled to occur one day after she was deposed in civil litigation. *See id.* at 24:30-26:00.

Mr. Whelan, Mr. Schamel, Mr. Naples, and Mr. Kim then proceeded to discuss a series of issues with the Magistrate Judge off of the record. *See id.* at 26:00-28:30. Of note, Mr. Schamel

- 3 -

and Mr. Naples agreed that they would proceed with sentencing whenever the Court ordered Dr. Ganesh to appear for sentencing; however, they would not agree to waive their right to seek a continuance if they, in consultatation with Dr. Ganesh, felt that it was appropriate to do so. *See* Ex. 1 at ¶ 11. Notably, Mr. Whelan would not agree to provide Womble Bond Dickinson (US) LLP with a copy of Dr. Ganesh's case-file prior to a grant of substitution; and thus, Mr. Schamel and Mr. Naples could review only publicly available documents prior to the hearing. *See id.* Mr. Schamel and Mr. Naples also noted that Mr. Whelan and Dr. Ganesh's relationship had suffered from poor communication. *See id.* Mr. Whelan agreed that he and Dr. Ganesh had experienced issues in communicating. *See id.* Dr. Ganesh then spoke, imploring the Court to grant her requested substitution. *See id.*

The Magistrate Judge denied Dr. Ganesh's request to substitute counsel. *See* Minute Entry (ECF No. 508). The Magistrate Judge first observed that three Supreme Court cases largely governed this dispute: *Wheat v. United States*, 486 U.S. 153 (1988); *Morris v. Slappy*, 461 U.S. 1 (1983); and *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). *See* PDF with Attached Audio File at 1:10-2:15 (ECF No. 510). Then, the Magistrate Judge emphasized that Dr. Ganesh's "track record" before the Court, in previously switching counsel, weighed against granting her request. *See id.* at 3:15-5:00. The Magistrate Judge also noted that there was "no reasonable way" that Mr. Kim, Mr. Schamel, and Mr. Naples could prepare for resentencing in accordance with the Court's current schedule, and that the substitution would "naturally lead to an extension." *See id.* at 5:00-5:40. The Magistrate Judge held that Dr. Ganesh would not suffer any prejudice with current counsel and that further delay would complicate these proceedings and complicate unspecified civil proceedings. *See id.* at 5:40-8:00. Finally, although recognizing that the "demands of the court's

calendar" were the "least significant" factor in weighing Dr. Ganesh's right to counsel, the Magistrate Judge stated, those too weighed against granting substitution. *See id.* at 8:00-8:43.[2]

## STANDARD OF REVIEW

This Court "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a).

## ARGUMENT

Criminal defendants have a "constitutional right to hire counsel of their choice." *United States v. D'Amore*, 56 F.3d 1202, 1204 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999). That right may be abridged only to serve a "**compelling** purpose." *United States v. Lillie*, 989 F.2d 1054, 1055–56 (9th Cir. 1993)) (emphasis added), *overruled on other grounds by Garrett*, 179 F.3d at 1145. "Absent such a compelling purpose, . . . it is a violation of the Sixth Amendment to deny a motion to substitute counsel and an error that must be reversed, regardless of whether prejudice results." *D'Amore*, 56 F.3d at 1204.

A "compelling purpose" may exist "when granting the motion would lead to a delay in the proceedings and the Government's interest in the prompt and efficient administration of justice outweighs the defendant's need for new counsel to adequately defend himself." *Id.* That said, "the defendant can't be denied his choice of retained counsel just because the request comes late, or the court thinks current counsel is doing an adequate job." *Lillie*, 989 F.2d at 1056.

The Magistrate Judge's decision that such a compelling purpose existed in this case is contrary to law. The decision (1) underestimates the need for Dr. Ganesh to obtain new counsel in order to adequately defend herself at sentencing, (2) ignores nuances underlying Dr. Ganesh's

---

[2] At various points throughout the hearing, both the Government and Magistrate Judge raised questions about Dr. Ganesh's financial ability to retain private counsel, as Dr. Ganesh is currently represented by court-appointed counsel. *See generally* PDFs with Attached Audio Files (ECF Nos. 509-510). On that issue: Dr. Ganesh's prior financial representations to the Court remain accurate, and with respect to both Mr. Cassman and Womble Bond Dickinson, Dr. Ganesh has been able to retain private counsel through the generosity of loans from family members and friends. *See* Ex. 1 at ¶ 13.

history of representation, (3) overstates the need for expediency in sentencing, and (4) overrelies on inapposite Supreme Court precedent.

First, "[e]ven if present counsel is competent, a serious breakdown in communications can result in an inadequate defense." *United States v. Nguyen*, 262 F.3d 998, 1003 (9th Cir. 2001). Relatedly, if a defendant is "'forced'" to proceed "'with the assistance of a particular lawyer with whom he is dissatisfied, with whom he will not cooperate, and with whom he will not, in any manner whatsoever, communicate,'" he is "denied his Sixth Amendment right to counsel[.]" *Id.* at 1003-04 (quoting *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir. 1970)). In short, "a court may not deny a substitution motion simply because it thinks current counsel's representation is adequate." *D'Amore*, 56 F.3d at 1206.

Between April 6, 2018 and the present, Mr. Whelan and Dr. Ganesh have not communicated by telephone and have only communicated (prior to the hearing on substitution) in-person, on one occasion, for one hour, on June 20, 2018. *See* Ex. 1 at ¶ 7. On at least three occasions, once on July 13, 2018, and twice on July 15, 2018, Dr. Ganesh requested that Mr. Whelan withdraw as counsel of record. *See id.* at ¶¶ 8-10. Although Dr. Ganesh has repeatedly emailed Mr. Whelan her thoughts about her case, Dr. Ganesh and Mr. Whelan have not engaged in a sufficient back-and-forth about sentencing strategy to provide Dr. Ganesh constitutionally sufficient representation at sentencing. *See id.* at ¶ 7.

This communication breakdown necessitates substitution. Dr. Ganesh is dissatisfied with Mr. Whelan's representation, and has hardly received any correspondence from him even though she has repeatedly attempted to do so and sentencing is set to occur in one day. In simply recognizing that Mr. Whelan was competent, the Magistrate Judge's decision neglected to consider the extent to which the communication issues described off the record would result in prejudice. As the Ninth Circuit explained in *Nguyen*, in the course of holding that the trial court abused its discretion in denying a reasonable countinuance for a substitute counsel to prepare for trial, the

"issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney." 262 F.3d at 1004.[3]

Furthermore, the Magistrate Judge's decision neglects nuances underlying the nature of Dr. Ganesh's prior substitutions of counsel. Dr. Ganesh reiterates what was argued at the hearing on substitution: (1) it is the norm to switch from a public defender to retain counsel at the beginning of a case,[4] (2) it is not unusual to switch from trial counsel to post-conviction counsel when a defendant loses at trial, (3) a defendant should not be blamed for substituting counsel when the defendant opposes that substitution, and (4) it is readily understandable that a defendant would want to replace court-appointed counsel with counsel of her choice. In short, this would only be the second (after Dr. Ganesh's post-trial shift from Mr. Horowitz to Mr. Cassman), meaningful shift in counsel of her choice. This "track record" does not justify denying a criminal defendant the right to counsel of her choice.

Third, the Ninth Circuit has "criticized" a trial court approach that is "'above all to be determined not to disturb the court's trial schedule.'" *Nguyen*, 262 F.3d at 1003 (quoting *United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998)). Indeed, "an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.'" *Id.* (quoting *Slappy*, 461 U.S. at 11-12).

Here, that insistence is manifest. At the outset, it is worth noting that Mr. Schamel and Mr. Naples represented that they would appear if the Court ordered sentencing for August 28; however,

---

[3] Though the Magistrate Judge's decision intimates that there is no allegation of a conflict as to counsel attempting to substitute into this case, Dr. Ganesh hereby asserts that this communication breakdown with current counsel amounts to a conflict constituting a constructive denial of the right to conflict-free counsel. *Accord Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) ("[W]here a court 'compels one charged with a grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict it deprives him of the effective representation of counsel whatsoever.'" (quoting *Brown*, 424 F.2d at 1170)).

[4] In fact, it would be exceptional if Dr. Ganesh knew who she was planning to retain before the issuance of the criminal indictment.

- 7 -

they simply would not agree to waive, preemptively, Dr. Ganesh's right to seek a continuance. But even if substitution did necessitate a continuance, the harms occasioned by a continuance for sentencing does not justify forcing a defendant to proceed at sentencing without counsel of her choice. The harms articulated in the decision are de minimis and speculative: the Magistrate Judge observed that delay might impact unspecified civil proceedings and her codefendant's case, but provided no further detail. While the Magistrate Judge emphasized that the concern for the Court's calendar was the "least significant" factor underlying the decision, *see* PDF With Attached Audio File at 8:00-8:43, it is in fact the only concern that is readily discernible, and it does not suffice to justify denying Dr. Ganesh her constitutional right to counsel of her choice.

Fourth and finally: the Magistrate Judge emphasized the role that the Supreme Court trio of *Wheat*, *Slappy*, and *Gonzalez-Lopez* played in shaping his decision.

In *Wheat*, the Court held that a trial court did not infringe upon a defendant's right to counsel of his choice because of a potential conflict of interest arising out of counsel's representation of three codefendants in a "complex drug distribution scheme." 486 U.S. at 163-64. Though the Supreme Court noted that the motion for substitution of counsel was "made so close to the time of trial," the Court only did so in order to emphasize that the trial court had little time to assess whether an actual conflict of interest existed. *Id.* at 163. Where, as the Magistrate Judge acknowledged, none of the parties alleged that counsel seeking substitution posed any actual or potential conflict of interest, *Wheat* offers this Court little guidance in reaching its decision.

In *Slappy*, the Supreme Court held that a trial court was justified in denying a motion for continuance in the midst of the **third day of trial** so as to permit his previous court-appointed attorney to represent him. 461 U.S. at 12-13. Of note, the defendant "specifically disavowed any dissatisfaction with counsel; he informed the court on the first day of trial that he was 'satisfied'" with counsel. *Id.* at 13. Here, by contrast, Dr. Ganesh expressed her dissatisfaction with Mr. Whelan's representation, and Dr. Ganesh made the motion two weeks before sentencing.

- 8 -

In *Gonzalez-Lopez*, the Supreme Court held that a violation of a defendant's Sixth Amendment right to counsel of choice is not subject to harmless-error analysis. 548 U.S. at 152. Though the Court recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar," it only did so in dicta. 548 U.S. at 151-52. In actuality, the Supreme Court's holding emphasizes the very issue at the heart of this appeal: the deprivation of one's choice of counsel is "structural error" that cannot be remedied, no matter how effective the ultimate representation. 548 U.S. at 150; *see id.* at 152 (Alito, J., dissenting) ("I disagree with the Court's **conclusion** that a criminal conviction must automatically be reversed whenever a trial court . . . prevents a defendant from being represented at trial by the defendant's first-choice attorney."). At bottom, the Magistrate Judge overrelied on Justice Alito's dissent in *Gonzalez-Lopez*, balancing Dr. Ganesh's right to choice of counsel against her current counsel's effectiveness, which is the exact opposite of what the controlling opinion in *Gonzalez-Lopez* instructs courts to do.

## CONCLUSION

In the face of the aforementioned breakdown in attorney-client communication, the understandable reasons that Dr. Ganesh is now seeking to substitute counsel for a fourth time, and the limited extent to which delay would cause any great unfairness, there is no "compelling purpose" to deny Dr. Ganesh the right to counsel of her choice. Accordingly, this Court should vacate the Magistrate Judge's decision and enter an ordering granting Dr. Ganesh the right to substitute counsel.

Coincident with that order, and in light of the communication breakdown between Dr. Ganesh and Mr. Whelan throughout the course of the sentencing proceedings, this Court should also postpone the sentencing proceedings for a minimum of two months, so as to permit counsel sufficient time to prepare new sentencing memoranda consistent with Dr. Ganesh's position.[5]

To the extent that the Court determines that a hearing is required on the instant appeal, Dr. Ganesh respectfully requests that the Court allow Womble Bond Dickinson (US) LLP to appear on Dr. Ganesh's behalf.

Dated:      August 27, 2018                  Respectfully submitted,

                                             /s/ Dr. Vilasni Ganesh
                                             Dr. Vilasni Ganesh

---

[5] This extension request should not factor into this Court's decision as to whether the Magistrate Judge acted contrary to law in denying Dr. Ganesh the right to substitute counsel. Dr. Ganesh is entitled to the time permitted by the Federal Rules of Criminal Procedure to prepare her appeal from the Magistrate Judge's order, and should not be forced to sacrifice her right to that time and submit a hurried appeal simply because doing so may impact the merits of her current appeal.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>VILASNI GANESH, et al.<br><br>Defendant. | No. CR 16-0211 LHK<br><br>**EXHIBIT 1: DECLARATION OF DR. VILASNI GANESH** |

1. I, Dr. Vilasni Ganesh, am over 18 years of age, am under no legal disability, make this declaration pursuant to 27 U.S.C. § 1746, have personal knowledge of the facts set forth herein, and have investigated and verified the accuracy of any other fact set forth herein.

2. I am a defendant in the above-captioned litigation.

3. On March 29, 2018, on the advice and with the assistance of separate counsel uninvolved in these proceedings, I filed a declaration alleging that Mr. Horowitz had provided ineffective assistance in these proceedings.

4. On April 2, 2018, Mr. Cassman moved to withdraw as counsel of record, and I strongly objected and urged the Court to permit Mr. Cassman to continue to serve as my counsel in these proceedings.

5. Between April 7, 2018, and August 12, 2018, I did not speak to my current attorney of record, Wm. Michael Whelan, Jr. ("Mr. Whelan"), via telephone, despite attempting to do so on numerous occasions. Repeatedly, Mr. Whelan has stated, via email, that he is too busy with other trial commitments and other cases to speak with me about my case.

6. Between April 7, 2018 and August 12, 2018, I met with Mr. Whelan, in-person, on only one occasion, for one-hour, to discuss my case.

7. Between April 7, 2018, and the present, I have emailed Mr. Whelan on numerous occasions. Though he has occasionally responded to my emails, we have not engaged in a

- 1 -

sufficient back-and-forth about sentencing strategy such that I feel my interests will be adequately represented at sentencing. Indeed, Mr. Whelan has repeatedly refused to file documents on my behalf, including motions to withdraw as counsel and supplements to my motion for a new trial, despite written instructions to do so.

8. On July 13, 2018, I asked Mr. Whelan to withdraw as my attorney of record to no effect.

9. On July 15, 2018, I twice, in writing, reiterated my request that Mr. Whelan withdraw as my attorney of record to no effect. I have since repeatedly requested that he withdraw as counsel to no effect.

10. On July 25, 2018, I was hospitalized for severe, stress-induced menstrual bleeding, and therefore, could not appear for sentencing. My hospitalization was not an effort to delay the sentencing proceedings.

11. On August 13, 2018, I appeared before the Magistrate Judge in support of my request to substitute Sang Hui Michael Kim, Mark E. Schamel, and Pascal F. Naples as counsel of record for Mr. Whelan. During the off-the-record portion of that hearing, the following occurred:

    a. Mr. Schamel and/or Mr. Naples agreed that they would proceed with sentencing whenever the Court ordered that I appear for sentencing; however, they would not agree to waive my right to seek a continuance if they, in consultatation with me, felt that it was appropriate to do so. Mr. Schamel and/or Mr. Naples further explained that Mr. Whelan refused to provide Womble Bond Dickinson (US) LLP with a copy of Dr. Ganesh's case-file until the Court had formally accepted the substitution of counsel.

    b. Mr. Schamel and/or Mr. Naples noted that the relationship between me and Mr. Whelan had suffered from poor communication.

   c. Mr. Whelan agreed that he and I had experienced issues in communicating with each other.

   d. I personally requested that the Court substitute Mr. Schamel, Mr. Naples, and Mr. Kim for Mr. Whelan, given the issues in communication between me and Mr. Whelan.

12. Presently, I do not believe that Mr. Whelan will adequately represent my interests at sentencing.

13. My prior financial representations to the Court remain accurate. With respect to both Mr. Cassman and Womble Bond Dickinson (US) LLP, I have been able to retain private counsel through the generosity of loans from family members and friends.

14. This declaration, and the accompanying appeal, were prepared with the assistance of Mr. Kim, Mr. Schamel, Mr. Naples, and Womble Bond Dickinson (US) LLP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of August, 2018.

                 Dr. Vilasni Ganesh